No. 25-1675

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

GEORGE L. MILLER, AS CHAPTER 7 TRUSTEE FOR THE ESTATES OF OUR
ALCHEMY, LLC AND ANDERSON DIGITAL, LLC,

*Appellant*,

v.

ANDERSON MEDIA CORPORATION, ANCONNECT, LLC AND ANDERSON
MANAGEMENT SERVICES, INC.,

*Appellees.*

————————

*On Appeal from the United States District Court
for the District of Delaware
Case No. 1:24-cv-00243 (Hon. Colm F. Connolly, Judge)*

APPELLANT'S OPENING BRIEF AND JOINT APPENDIX,

VOL. I

STEVEN M. COREN
COREN & RESS, P.C.
TWO COMMERCE SQUARE, SUITE 3900
2001 MARKET STREET
PHILADELPHIA, PA 19103
(215) 735-8700
*Counsel for Appellant*

JUNE 30, 2025

# United States Court of Appeals for the Third Circuit

## <u>Corporate Disclosure Statement and</u>
## <u>Statement of Financial Interest</u>

No. <u>25-1675</u>

George L. Miller, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC

v.

Anderson Media Corporation, et al.

<u>Instructions</u>

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, makes the following disclosure:

George L. Miller, Chapter 7 Trustee
_____
(Name of Party)

1) For non-governmental corporate parties please list all parent corporations:

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

Top 20 Unsecured Creditors: SONY DADC US INC; ANDERSON MERCHANDISERS LLC; FUNimation Productions, LTD; PBS; AMBI; NU IMAGE, INC.; MPI MEDIA GROUP; CJ ENTERTAINMENT; TEAM MARKETING; Mill Creek Entertainment, LLC; TOIION, INC.; PHASE 4 FILMS; MAVERICK ENTERTAINMENT; WELL GO USA-MMS; Level 33 Entertainment (Bossa Nova); KINOLOGY SAS; EXCEL ENTERTAINMENT GROUP; MICROSOFT; NCIRCLE/ALLIANCE; and SOFTLAND INTERNATIONAL.

/s/ Steven M. Coren
_____
(Signature of Counsel or Party)

Dated: 4/25/2025
_____

rev: 09/2014                    (Page 2 of 2)

# TABLE OF CONTENTS

Table of Authorities.................................................................................... iii

JURISDICTIONAL STATEMENT ...............................................................1

ISSUE PRESENTED FOR REVIEW ...........................................................1

STATEMENT OF RELATED CASES ..........................................................2

STATEMENT OF THE CASE........................................................................2

I. Relevant Procedural History.....................................................................2

II. Statement of Relevant Facts ....................................................................4

    A. The ANConnect Transaction ............................................................4

    B. The Delaware State Court Action ......................................................5

    C. ANConnect Funnels Money to Affiliates...........................................5

    D. September 13, 2018 Settlement Meeting .........................................8

    E. Discovery in the 2018 Action Reveals the True Extent of the Fraudulent Transfers ................................................................................. 10

SUMMARY OF ARGUMENT....................................................................11

ARGUMENT ...............................................................................................11

I. Standard of Review..................................................................................11

II. Applicable Statute of Limitations.........................................................12

III. The Lower Courts Erred By Holding That Misstatements Made During the Settlement Meeting Put the Trustee On Notice of Potential Claims .................14

IV. The Lower Courts Usurped the Role of the Factfinder to Hold That the Trustee Did Not Act With Reasonable Diligence In Investigating His Claims .....................................................................................................22

    A. A Reasonable Jury Could Find That the Trustee Could Not Have Discovered the Transfers Until He Received Discovery in the 2018 Action...................23

i

B. The Fraudulent Transfers Challenged in the 2018 Action Are Entirely Different and Provide No Support for the Lower Courts' Decision ............27

V. The Lower Courts' Decision Will Have A Chilling Effect On Settlement Discussions In This Circuit .................................................................29

CONCLUSION .......................................................................................31

Certifications of Compliance, Bar Membership, and Service ...........................Tab 1

Joint Appendix – Volume I....................................................................Tab 2

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..............................................12

*Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585 (5th Cir. 2020) ..............13

*Coleman v. Pricewaterhousecoopers, LLC*, 854 A.2d 838 (Del. 2004) ........... 16, 23

*Duran v. Henderson*, 71 S.W.3d 833 (Tex. App. 2002)...........................................13

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) .....................................30

*Estate of Ewers*, 695 S.W.3d 603 (Tex. App. 2024) ................................................23

*In re AE Liquidation, Inc.*, 866 F.3d 515 (3d Cir. 2017).................................. 12, 16

*In re IT Grp. Inc.*, No. 02-10118, 2005 WL 3050611 (D. Del. Nov. 15, 2005) ........14

*In re Martin*, 91 F.3d 389 (3d Cir. 1996).................................................................30

*In re PennySaver USA Publ'g, LLC*, 602 B.R. 256, (Bankr. D. Del. 2019).............17

*In re Washington Mut., Inc.*, 408 B.R. 45 (Bankr. D. Del. 2009) ..............................24

*In re Weinstein Co. Holdings LLC*, 997 F.3d 497 (3d Cir. 2021) ...........................12

*In re Zohar III, Corp.*, 631 B.R. 133 (Bankr. D. Del. 2021)....................................17

*Janvey v. Romero*, 817 F.3d 184 (5th Cir. 2016) .....................................................13

*Jones v. Dyna Drill Techs., LLC*, No. 01-16-01008-CV, 2018 WL 4016413
   (Tex. App. Aug. 23, 2018) .....................................................................................13

*JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211 (Del. Ch. 2019)....... *passim*

*Miller v. ANConnect, LLC, et al.*, Adv. No. 18-50633 ..............................................2

*Santander Bank, N.A. v. Branch Banking & Tr. Co.*, 2020 WL 42724
   (M.D. Pa. Jan. 3, 2020).........................................................................................16

*Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*,
   470 F.3d 535 (3d Cir. 2006)...................................................................................12

*State Farm Mut. Auto. Ins. Co. v. Cordua*, 834 F. Supp. 2d 301 (E.D. Pa. 2011) ...20

*Union Tank Car Co. v. Maxwell*, 2021 WL 2044345 (S.D. Tex. May 21, 2021) .....22

## Rules and Statutes

28 U.S.C. § 157 ............................................................................................................1

28 U.S.C. § 158 ............................................................................................................1

28 U.S.C. § 1334 ..........................................................................................................1

6 Del. C. § 1309 ............................................................................... 13, 18, 21

FED. R. BANKR. P. 7056..............................................................................................12

FED. R. CIV. P. 56 ....................................................................... 12, 19, 25

Tex. Bus. & Com. Code Ann. § 24.010 .......................................................... *passim*

**Other Authorities**

9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)...........................................30
Delaware Lawyers' Rule of Professional Conduct 4.1, cmt. [2], *available at*
    https://courts.delaware.gov/ forms/download.aspx?id=160568...........................30

## JURISDICTIONAL STATEMENT

Appellant George L. Miller, Chapter 7 Trustee (the "Trustee" or "Appellant") for the bankruptcy estates of Our Alchemy, LLC ("Alchemy") and Anderson Digital, LLC ("Anderson Digital"), appeals from an order of the United States District Court for the District of Delaware (the "District Court"), JA5, which affirmed an order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") granting summary judgment in favor of Appellees Anderson Media Corporation ("Anderson Media"), ANConnect, LLC ("ANConnect"), and Anderson Management Services, Inc. ("AMS") (collectively, "Appellees") on the sole remaining claim in the underlying adversary proceeding. JA30-JA43. The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157 and 1334. The District Court had jurisdiction to review the Bankruptcy Court's order pursuant to 28 U.S.C. § 158(a)(1). This Court has jurisdiction to review the District Court's order pursuant to 28 U.S.C. § 158(d)(1). This appeal is timely because the District Court's affirmance was entered on March 31, 2025, and Appellant's notice of appeal was filed on April 7, 2025. JA1.

## ISSUE PRESENTED FOR REVIEW

1.    Whether the lower courts usurped the role of the factfinder and misapplied the discovery rule when they held that the Trustee's claims were time-barred based on findings that misstatements made during a settlement meeting put

1

the Trustee on notice of potential claims and that the Trustee did not act with reasonable diligence in investigating his claims?

## STATEMENT OF RELATED CASES

This case has never previously been before this Court. Appellant is unaware of any related case or proceeding other than the 2018 Action described below.

## CONCISE STATEMENT OF THE CASE

### I.    Relevant Procedural History

Alchemy and Anderson Digital filed for Chapter 7 bankruptcy on July 1, 2016. *See* JA31. On June 29, 2018, the Trustee commenced a related adversary proceeding against multiple defendants, including ANConnect, captioned *Miller v. ANConnect, LLC, et al.*, Adv. No. 18-50633 (the "2018 Action"), which seeks, *inter alia*, to avoid and recover a preferential transfer and to recover accounts receivable arising out of Alchemy's July 2015 purchase of certain assets from ANConnect. *See id.*; *see also* JA44-JA60 (docket from 2018 Action), JA70-JA132 (Complaint from 2018 Action). The 2018 Action remains pending.[1]

---

[1] On June 9, 2025, during the pendency of the instant appeal, the parties in the 2018 Action filed a stipulation narrowing the scope of the case for trial. *See* JA60 at D.I. 337. While the stipulation eliminated certain of the Trustee's claims, it does not impact the issue on appeal as a substantial judgment is still sought against ANConnect.

In March 2021, during discovery in the 2018 Action, the Trustee learned that ANConnect had transferred approximately $24 million to related entities in June and August 2016 (collectively, the "Transfers"), while it was winding down operations. *See infra* Sections II.C and II.D.

The Trustee commenced the underlying adversary proceeding on December 29, 2021 against Anderson Media, ANConnect, and AMS, seeking to, *inter alia*, avoid and recover the Transfers as actual fraudulent transfers (the "2021 Action"). *See* JA298-JA314 (Complaint from 2021 Action). On June 27, 2022, the Bankruptcy Court denied Appellees' motion to dismiss the Trustee's actual fraudulent transfer claims. *See* JA64 (pertinent docket entry).[2]

Following discovery in the 2021 Action, Appellees moved for summary judgment. JA356-JA1732. On February 13, 2024, the Bankruptcy Court held that the Trustee's actual fraudulent transfer claims are time-barred and granted summary judgment. *See* JA30-JA43.[3] On March 31, 2025, the District Court affirmed the

---

[2]    The Trustee's Complaint also asserted claims for constructive fraudulent transfer, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty, which the Bankruptcy Court dismissed (and the Trustee has not appealed). Accordingly, the sole remaining claim in the 2021 Action is Count I, for actual fraudulent transfer.

[3]    Because the Bankruptcy Court granted summary judgment on statute of limitations grounds and the District Court affirmed on the same grounds, neither court addressed Appellees' argument as to the sufficiency of the evidence. *See* JA32 at n.7. Accordingly, the Trustee's Statement of Relevant Facts includes only those relevant to Appellees' statute of limitations defense.

Bankruptcy Court's decision. *See* JA5-JA28 Both the Bankruptcy Court and the District Court improperly intruded on the role of the factfinder to resolve fact-based questions of reasonableness and inquiry notice against the Trustee as a matter of law—giving rise to the error complained of in this appeal.

## II.    Statement of Relevant Facts

Anderson Media is a closely held Delaware corporation which functions as the holding company for a group of companies which includes ANConnect and AMS. *See* JA341 at ¶ 8. ANConnect and AMS are wholly owned by Anderson Media, and AMS is the sole Manager of ANConnect. *See id.* at ¶¶ 9-10. ANConnect is a Texas limited liability company, and AMS is a Tennessee corporation. *See id.* at ¶¶ 8-10. Anderson Media and ANConnect are privately held companies with non-public finances. *See id.* at ¶ 8; JA349 at ¶ 64.

### A.    The ANConnect Transaction

In July 2015, pursuant to an Asset Purchase Agreement dated May 7, 2015 ("APA"), Debtor Alchemy purchased certain physical home video and digital distribution capabilities from ANConnect, including, *inter alia*, the purchase of Debtor Anderson Digital (the "ANConnect Transaction"). *See* JA1793-JA1865. The cash payments made by Alchemy to ANConnect in connection with the transaction's closing totaled $29,888,124.40. JA1867. ANConnect knew that Alchemy failed to

4

receive reasonably equivalent value in the ANConnect Transaction, as it internally described the business as "immediately and forever upside down." JA1870.

### B.    The Delaware State Court Action

On February 17, 2016, ANConnect and Anderson Merchandisers (another Anderson affiliate) sued Alchemy in the Superior Court of Delaware (the "Delaware State Court Action"), alleging that Alchemy owed them for post-closing adjustments and certain other payments under the APA, as well as compensation for various services under a Transition Services Agreement between Alchemy and ANConnect. *See* JA1877-JA1898 (Delaware State Court Action Complaint).

On April 11, 2016, Alchemy filed an Answer with Affirmative Defenses and Counterclaims in the Delaware State Court Action, denying liability and asserting Counterclaims against ANConnect for breach of the APA and ancillary documents, including a claim for ANConnect's wrongful withholding of more than $6 million in receivables which ANConnect admitted it owed to Alchemy.  *See* JA1911-JA1977; *see also* JA1897 at ¶¶ 67-68.

### C.    ANConnect Funnels Money to Affiliates

During the summer of 2016, while ANConnect was liquidating its assets and winding down operations and only a few months after Alchemy asserted its Counterclaims in the Delaware State Court Action, ANConnect began funneling

money to its affiliates, via the Transfers, to frustrate payment on Alchemy's claims.

Specifically, ANConnect made the following Transfers:

- <u>June 2016 AM Transfer</u>: In June 2016, ANConnect transferred $10 million to Anderson Media as an equity distribution.[4]

- <u>June 2016 AMS Transfer</u>: ANConnect also transferred $1,096,320 to AMS in June 2016.[5]

- <u>August 2016 Transfer</u>: In August 2016, ANConnect transferred an additional $5 million to Anderson Media as an equity distribution.[6]

---

[4]    *See* JA2066–JA2069 (August 5, 2016 email from Boris Popov, Director of Internal Audit, to Anderson Media CFO Jay Maier and ANConnect CFO/COO Chuck Taylor, attaching "Cash Flow Analysis" for ANConnect, with section entitled "Cash Flow to Parent" confirming a "Distribution to Media (completed in June)" in the amount of $10,000,000); JA2071–JA2073 (spreadsheet indicating that Anderson Media received a "Special payment" of $10 million in June 2016).

[5]    *See* JA348, Defendants' Answer at ¶ 50 ("Defendants admit that [ANConnect] transferred $1,096,320 to AMS in June 2016."). This payment was not for legitimate "management fees" (as Defendants asserted in their motion for summary judgment), because internal ANConnect records establish that management fees for just three quarters of 2016—a year in which ANConnect was winding down its operations—had increased by $15 million from the prior year without justification. *See* JA2075 at n. 1 (internal ANConnect income statement as of September 30, 2016).

[6]    *See* JA2077–JA2079 (September 28, 2016 email from Popov to Maier with attachment confirming that a "P[a]yment to Anderson Media" in the amount of $5,000,000 was "Paid in August").

- <u>Additional Transfer</u>: ANConnect transferred an additional $8.8 million to Anderson Media, over and above the June 2016 AM Transfer and the August 2016 Transfer (which together, totaled $15 million).[7]

While Appellees' summary judgment filings disputed (without evidentiary support) the purpose of the Transfers and whether some were made to Anderson Media or AMS, they did *not* dispute that ANConnect made the Transfers in the amounts indicated.

When the Transfers were made, ANConnect was liquidating all its business lines. *See, e.g.*, JA2067 (noting that ANConnect sold its book business effective 4/29/16 and sold its music and internet business effective 7/8/16). ANConnect suffered substantial operating losses and negative EBITDA from 2014-2016, including a net loss of $4.37 million for its fiscal year ending October 3, 2014, and negative rolling twelve-month EBITDA of $16.9 million as of 1/30/15 and $7.8 million as of 5/29/15. *See* JA2089 (Combined Financial Report showing $4.37

---

[7]    This is established by evidence that ANConnect had made a total of $23.8 million in transfers to Anderson Media in the wake of sales of its video, music, and book businesses. *See* JA2081-JA2083 (December 13, 2016 email attaching "Analysis for Board discussion 12.13.16.xlsx," stating ANConnect made a total of $23.8 million in "Payments to parent"—*i.e.*, to Anderson Media, ANConnect's parent company). According to numerous ANConnect internal documents, the almost $24 million in transfers constituted distributions—not legitimate payments for services. *See* JA2069 (stating that ANConnect intended to upstream $23.6 million to Anderson Media "net of loan repayment"); JA2071-JA2073 (anticipating that ANConnect would make "[s]pecial payment[s]" totaling $23.5 million to Anderson Media from June 2016-February 2017).

7

million loss for year ended 10/3/2014); JA2091 (listing a negative $16,897,992 EBITDA for the ANConnect business unit for the 12 months ended 1/30/15); JA2093 (listing a negative $7,816,116 EBITDA for the ANConnect business unit for the 12 months ended 5/29/15). ANConnect's internal balance sheet as of September 30, 2016—after all its business lines had been sold—reflects that ANConnect was insolvent because its liabilities exceeded its assets by $7.2 million, even without considering the $8 million in improperly-withheld receivables due to Alchemy pursuant to the Counterclaims. *See* JA2095-JA2097 (December 8, 2016 email from Taylor to Maier and another individual, attaching "detailed trial balance as of September 30, 2016" which indicates assets totaling $12,972,382.12 and liabilities totaling $20,175,350.55).

### D.    September 13, 2018 Settlement Meeting

On September 13, 2018, the parties met to discuss settlement (the "Settlement Meeting") of the Trustee's claims in the 2018 Action. *See* JA404, Maier Decl. at ¶ 32 (purpose of meeting was "to explore settlement of the Trustee's claims"); JA1770, Coren Decl. at ¶¶ 4-5. During the Settlement Meeting, Anderson Media's CFO, Jay Maier, "stated that ANConnect was 'judgment proof.'" *Id.*, Coren Decl. at ¶ 6. In response:

> 7.    [T]he Trustee and [the Trustee's attorney Steven Coren] attempted to drill down into specifics about ANConnect's finances, [and] were met with stonewalling . . . . In response to an inquiry about upstreaming, Mr. Maier and

8

[ANConnect] Attorney [Grant] Stein stated that a small amount was transferred, saying something to the effect that the amount transferred was only "a million dollars or two."

8.    [Attorney Coren] requested that ANConnect, which is a private company with nonpublic finances, support the contention that only one or two million dollars was upstreamed to its parent entities and that it was insolvent by providing supporting financial documents. Mr. Maier and Attorney Stein refused to provide any further information and stated that such information would follow only after the Trustee obtained a judgment.

9.    In [Attorney Coren's] extensive experience representing Trustees . . . it is typical for defendants to "cry poor" during settlement discussions, and [Attorney Coren has] represented Trustees which obtained significant financial recoveries from defendants who previously claimed to be judgment proof. Given this, the inadmissible nature of settlement discussions, and the relaxed rules concerning candor in the context of settlement discussions, [Attorney Coren] did not take the statements of Mr. Maier and Attorney Stein to be factual statements, but rather incidental puffery typical to negotiation.

10.    It was not until March 2021, when ANconnect made its document production in the [2018 Action], that the Trustee and [Attorney Coren] discovered that the actual amount upstreamed by ANConnect to its related entities was not one or two million dollars, as suggested by Attorney Stein and Mr. Maier during the September 2018 meeting, but was in fact nearly $24 million, an exponentially higher amount.

JA1770-JA1772, Coren Decl. at ¶¶ 7-10 (footnote 1 omitted).

Attorney Coren's recollection of the meeting is corroborated by the deposition testimony of the Trustee and of William Homony, a partner at Miller Coffey Tate LLP, the Trustee's accountants and bankruptcy consultants. *See* JA791-JA800, Miller

Dep. at 10:19-11:9, 13:5-19:19 (the Trustee testifies that ANConnect's attorney "said that there were certain minor transfers . . . you know, $1 million or $2 million or something like that. . . . [H]e never said $29 million. Never. . . . I asked for the documentation. And I never got it. So, in my opinion, it was all posturing, and they didn't have any evidence to support that."); JA2175-JA2180, Homony Dep. at 77:19-78:5, 80:9-82:13 (Homony testifies that "I only recall Grant saying that in connection with the upstreaming comment, we asked how much, and I believe Grant said a few million dollars was upstreamed.").

There is a disputed issue of material fact as to whether, at the Settlement Meeting, Appellees informed the Trustee of the Transfers or their magnitude.

### E.    Discovery in the 2018 Action Reveals the True Extent of the Fraudulent Transfers

In March 2021, when ANConnect made its document production in the 2018 Action, the Trustee and his counsel first discovered that ANConnect had upstreamed, via the Transfers, nearly $24 million to its related entities. *See* JA1771-JA1772, Coren Decl. at ¶ 10; JA800-JA801, Miller Dep. at 19:6-20:7 (Trustee testifies that he did not discover the amount upstreamed by ANConnect until "discovery [in the 2018 Action] started, and then we found that in discovery."); JA2180, Homony Dep. at 82:10-13; JA2230-JA2232 (3/25/21 letter from ANConnect attorney conveying "ANConnect's first production"); JA2066-JA2069 and JA2081-JA2083 (documents

produced by ANConnect on 3/25/21 as part of its first production that for the first time disclosed to the Trustee the existence and magnitude of the transfers at issue).

Shortly thereafter, in December 2021, the Trustee commenced the 2021 Action. During discovery, the Trustee requested that Appellees identify all transfers ANConnect made to its affiliates since 2015 and the purpose of those transfers. JA2234-JA2242 at pp. 5-6. Appellees refused to do so, objecting that the request sought "confidential information," was "overbroad" and "irrelevant," and stating that data which may be necessary to respond to the request was either in remote storage or on a deactivated server. *Id.*

## SUMMARY OF ARGUMENT

The lower courts erred in ruling that Appellant's claims were untimely under 6 Del. C. § 1309(1) and/or Tex. Bus. & Com. Code § 24.010(a)(1). Specifically, the lower courts usurped the role of the factfinder and erred when they held as a matter of law that (i) misstatements made during the Settlement Meeting were sufficient to put the Trustee on notice of potential claims; and (ii) the Trustee did not act with reasonable diligence in investigating his claims following the Settlement Meeting.

## ARGUMENT

### I.    Standard of Review

This Court conducts plenary review over the District Court's appellate review of the Bankruptcy Court's decision, exercising the same standard of review as the

District Court in reviewing the Bankruptcy Court's determinations. *In re Miller*, 730 F.3d 198, 203 (3d Cir. 2013). On appeal, an order granting summary judgment is subject to plenary review. *In re Weinstein Co. Holdings LLC*, 997 F.3d 497, 503 (3d Cir. 2021). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also* FED. R. BANKR. P. 7056. The Court views all facts and draws all inferences in the non-movant's favor. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). The Court "do[es] not weigh the evidence"; rather, it "assess[es] whether the evidence is 'such that a reasonable jury could return a verdict for the nonmoving party.'" *In re AE Liquidation, Inc.*, 866 F.3d 515, 523 (3d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## II.    Applicable Statute of Limitations

Delaware and Texas apply the same statute of limitations for actual fraudulent transfer claims, which under the law of both jurisdictions must be brought "within 4 years after the transfer was made or the obligation was incurred, or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered

by the claimant." 6 Del. C. § 1309(1); *accord* Tex. Bus. & Com. Code Ann. § 24.010(a)(1).[8]

The Trustee's actual fraudulent transfer claim is governed by the statutory language which allows claims to be brought within one year after the transfer was or could reasonably have been discovered, sometimes referred to in caselaw as the "discovery rule." Under the laws of Delaware and Texas, that one-year period does not begin to run until the plaintiff knew of or could reasonably have discovered ***both*** the transfer ***and*** its fraudulent nature. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211, 1239-40 (Del. Ch. 2019); *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589-90 (5th Cir. 2020); *Duran v. Henderson*, 71 S.W.3d 833, 839 (Tex. App. 2002).

"When a plaintiff discovered or could reasonably have discovered a transfer is generally a question of fact for the fact-finder." *Janvey v. Romero*, 817 F.3d 184, 189 (5th Cir. 2016); *see also Jones v. Dyna Drill Techs., LLC*, No. 01-16-01008-CV, 2018 WL 4016413, at *9 (Tex. App. Aug. 23, 2018) ("Whether a fraudulent-transfer claim has been extinguished by the statute of repose ordinarily presents a question of fact for the factfinder to resolve."); *In re IT Grp. Inc.*, No. 02-10118, 2005 WL

---

[8] The lower courts correctly found it unnecessary to engage in a choice of law analysis to determine if Delaware or Texas law applies, because the relevant provisions of the Delaware Uniform Fraudulent Transfer Act ("DUFTA") and Texas Uniform Fraudulent Transfer Act ("TUFTA") are identical. *See* JA33-JA34; JA8 at n.2, JA16.

3050611, at *16 (D. Del. Nov. 15, 2005) (holding under Delaware law that application of the discovery rule in a fraudulent transfer case "is a factual issue").

## III.   The Lower Courts Erred By Holding That Misstatements Made During the Settlement Meeting Put the Trustee On Notice of Potential Claims

The lower courts held as a matter of law that Appellees' misstatements at the Settlement Meeting concerning the magnitude of the Transfers sufficiently put the Trustee on notice of his claims. In doing so, they invaded the province of the jury to make credibility determinations and resolve disputed issues of material fact and misapplied the discovery rule.

As set forth above, the Trustee submitted evidence—specifically, deposition testimony of the Trustee and Mr. Homony, and Attorney Coren's Declaration—which refuted Appellees' assertions[9] that they sufficiently informed the Trustee or his counsel of the Transfers or their magnitude. *See* JA791-JA800, Miller Dep. at 10:19-11:9, 13:5-19:19 (Trustee's testimony that Appellees' attorney said there were "minor transfers . . . $1 million or $2 million or something like that" and never provided any further documentation); JA2175-JA2180, Homony Dep. at 77:19-78:5, 80:9-82:13 (Mr. Homony's testimony that Appellees' attorney said "a few million dollars was upstreamed"); JA1770-1772, Coren Decl. at ¶¶ 6-10 (setting forth Attorney Coren's recollection of the Settlement Meeting, including that Appellees' attorney

---

[9]     *See* JA404, Declaration of Jay Maier at ¶ 34.

14

represented that "a small amount . . . only 'a million dollars or two'" was transferred and refused to provide further information). The testimony proffered by the Trustee instead shows that the truth concerning the magnitude of the Transfers was concealed by misrepresenting the amounts upstreamed as relatively minor.

Resolution of the disputed issues of fact relating to the disclosures at the Settlement Meeting required the weighing of evidence and credibility determinations that the lower courts were not permitted to make on summary judgment. Both the Bankruptcy Court and the District Court acknowledged that there was conflicting testimony concerning the parties' discussions at the Settlement Meeting,[10] but erred by rejecting the Trustee's version of events and holding that misstatements made during a settlement discussion were sufficient as a matter of law to put him on notice of a potential claim.

The lower courts purportedly reached their conclusions "based on the Trustee's evidence and assertions alone" (JA14, JA26), but that does not excuse the improper weighing of evidence. The summary judgment standard requires courts to "view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences"; it does *not* grant courts license to weigh credibility of witnesses or sufficiency of evidence, as long as they focus only on the

---

[10]    *See* JA37-JA39; JA11 ("The parties submitted competing recollections of the September 2018 meeting...").

15

non-movant's evidence. *AE Liquidation*, 866 F.3d at 522-23. Here, for example, the lower courts found that Appellees' failure to provide more information about ANConnect's finances should have "solidified" concerns about unlawful transfers (JA41), but the opposite inference could be drawn as well—that ANConnect's "cry[ing] poor" was "incidental puffery typical to negotiation." JA1771, Coren Dec. at ¶ 9. Where evidence can support more than one inference, then "[t]he issue . . . is clearly one of disputed fact." *Coleman v. Pricewaterhousecoopers, LLC*, 854 A.2d 838, 843 (Del. 2004) (holding lower court erred in granting summary judgment on issue of inquiry notice).

It was for the jury to weigh the parties' credibility and to make factual determinations such as whether the Appellees' statements at the Settlement Meeting were misleading, whether such statements would put a reasonable plaintiff on notice of the Transfers and their fraudulent nature, and, as discussed in greater detail below, whether the Trustee acted with reasonable diligence. *See, e.g.*, *Santander Bank, N.A. v. Branch Banking & Tr. Co.*, 2020 WL 42724, at *6 (M.D. Pa. Jan. 3, 2020) (denying summary judgment under Pennsylvania UFTA's one-year discovery rule, where parties presented "competing evidence" and "reasonable fact finders could differ" as to when plaintiff could reasonably have discovered defendant's fraud).

The inaccurate disclosures during the Settlement Meeting did not provide notice to the Trustee of information sufficient to bring fraudulent transfer claims. It

is well-established that a fraudulent transfer claim is not adequately pleaded without sufficient specificity concerning the timeframe, amount, and fraudulent intent (whether established by direct evidence or via badges of fraud) of the challenged transfers. *See, e.g.*, *In re PennySaver USA Publ'g, LLC*, 602 B.R. 256, 268 (Bankr. D. Del. 2019); *In re Zohar III, Corp.*, 631 B.R. 133, 169-70 (Bankr. D. Del. 2021). Appellees' vague and inaccurate disclosures during the Settlement Meeting would not meet this standard. *See* JA1772, Coren Decl. at ¶ 11.[11]

The District Court agreed with the Bankruptcy Court's finding that: "The Trustee contends that it was not until 2021 that he learned that Defendants had actually transferred nearly $24 million, at which point, the Trustee contends, he acted promptly in filing this action. **But that is not how the discovery rule works**." JA41 (emphasis added); JA21. But this holding misapplies the discovery rule.

Contrary to what the lower courts held, the recent decision of the Delaware Court of Chancery in *JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211 (Del. Ch. 2019), addressing § 1309(1) of DUFTA under analogous facts, establishes that the Trustee's prompt action upon learning the full magnitude of the Transfers satisfied the discovery rule.

---

[11]    Moreover, the relatively small amount of potential upstreaming revealed to the Trustee (only "a million dollars or two" compared to the over $50 million in claims asserted against ANConnect and its affiliates in the 2018 Action) would not reasonably have justified the expense and burden of filing and prosecuting an additional adversary proceeding. *See* JA1772, Coren Decl. at ¶ 11.

In *JPMorgan Chase*, the plaintiff asserted actual fraudulent transfer claims under DUFTA to avoid, *inter alia*, dividend payments made to defendant's stockholders. The defendant moved to dismiss on the basis that the claims were untimely. *See JPMorgan Chase*, 213 A.3d at 1238. The Chancery Court rejected these arguments, holding that the claims to avoid the dividends were timely under the one-year discovery period in 6 Del. C. § 1309(1) because, prior to the one-year period, the plaintiff knew only that "some dividends" had been paid over the course of several years, but was not "aware of the scope of [defendant's] dividend payments or of [defendant's] financial condition at the time so as to put [plaintiff] on notice that the dividends may have been fraudulent in nature." *Id.* at 1241. Further, in a related action between the parties, the defendant had employed obstructionist tactics during pre-judgment discovery to prevent its witnesses from answering questions about the dividends or its financial condition. *Id.* at 1241-42. The Chancery Court held that, under these facts, the plaintiff did not have sufficient information to place it on notice of the dividends and their fraudulent nature. *Id.* at 1242. Rather, the one-year discovery period under § 1309(1) was not triggered until several years later when the defendant finally produced documents "disclos[ing] for the first time (i) that it had paid approximately $117 million in dividends before 2011 and (ii) its total revenue since formation." *Id.* at 1244. Because the plaintiff filed its complaint less

than one year after the document production, the actual fraudulent transfer claims were timely. *See id.*

Here, like in *JPMorgan Chase*, prior to March 2021 the Trustee knew only that some relatively minimal amount of transfers had been made to ANConnect's related entities, but did not know the full scope of Transfers that had actually been made or have detailed information concerning the specifics of the Transfers or the finances of ANConnect and its related entities. ANConnect stonewalled not only the Trustee's attempts to obtain more information at the Settlement Meeting,[12] but also his attempts to take discovery related even to the ANConnect Transaction (much less other subjects like ancillary internal transfers) in the 2018 Action.  Indeed, in the 2018 Action, ANConnect sought partial summary judgment based on an argument that it was unnecessary to conduct discovery at all. *See* JA180-JA181, Plaintiff's Memorandum in Support of His Request to Allow Discovery Pursuant to Federal Rule of Civil Procedure 56(d) filed in 2018 Action (summarizing the Trustee's efforts to begin discovery, which were rebuffed by ANConnect); JA205-JA207, Coren Dec. from 2018 Action at ¶¶ 4-10 (further describing ANConnect's efforts to stonewall

---

[12]    *See* JA1770-JA1771, Coren Decl. at ¶¶ 7-8; JA791-JA800, Miller Dep. at 10:19-11:9, 13:5-19:19 (Trustee's testimony that he asked for information concerning the purported "minor transfers" that were made and ANConnect's finances, but never received it—leading him to believe ANConnect's claims of being "judgment-proof" were just posturing).

discovery in the 2018 Action); JA290-JA297 (Opinion and Order denying ANConnect's premature summary judgment motion).[13]

The District Court attempted to distinguish *JPMorgan Chase* on the basis that "Appellees' financial condition was disclosed" (JA24), but the Trustee's general awareness that the Appellees' businesses were liquidating and winding down is not comparable to the type of specific financial information referenced in *JPMorgan Chase* or sufficient as a matter of law to hold that the Trustee was on inquiry notice. *See, e.g.*, *JPMorgan Chase*, 213 A.3d at 1241-42 (referencing "questions about [defendant's] assets, financial health, cash position, the per-share value of any dividend, the date of each dividend, and their total amounts" that defendant's witnesses refused to answer).[14]

---

[13]    Even during discovery in the 2021 Action, the Appellees refused to identify transfers made to affiliates. *See* JA2238-JA2239 (Appellees' blanket objection to interrogatories requesting ANConnect to identify transfers to its affiliates).

[14]    Nor could other creditors have reasonably discovered the Transfers or their fraudulent nature. In the Bankruptcy Court, Appellees submitted two news articles and a press release to contend that their liquidation was publicly disclosed (*see* JA733-JA742; JA11 (District Court opinion referencing same)), but those materials did nothing to reveal the Transfers or their fraudulent nature. They reference sales of portions of ANConnect's business to Readerlink and Alliance and employee layoffs, but contain no information about transactions with insiders, resolution of creditor claims, or how ANConnect's remaining assets would be handled. *State Farm Mut. Auto. Ins. Co. v. Cordua*, 834 F. Supp. 2d 301, 308 (E.D. Pa. 2011) (plaintiffs' knowledge that defendant had received proceeds did not place them on notice of fraudulent transfers, where they had no reason to know the proceeds were being passed on to a third party) (applying Pennsylvania UFTA). And even to the extent a creditor could infer a poor financial condition, the materials submitted by Appellees

*JPMorgan Chase* also demonstrates that, contrary to what the lower courts found,[15] knowledge (or lack thereof) concerning the "scope" of the fraudulent transfers is relevant to the question of inquiry notice. *JPMorgan Chase*, 213 A.3d at 1241. While it is true as a general matter that a statute of limitations can begin to run before the full extent of the injury is known, that does not mean that factual questions concerning the plaintiff's knowledge of the scope or magnitude of challenged transfers are irrelevant or can be decided as a matter of law. This is particularly true here—where the Trustee presented evidence that the Appellees concealed the magnitude of the Transfers by misrepresenting the amounts upstreamed as relatively minor and obstructed efforts to obtain discovery even on matters directly related to the 2018 Action (much less other internal transfers).

The evidence submitted by the Trustee was more than sufficient to create disputed issues of material fact concerning Appellees' statute of limitations affirmative defense that the one-year discovery period under 6 Del. C. § 1309(1) (or Tex. Bus. & Com. Code § 24.010(a)(1)) began to run in September 2018 (at the Settlement Meeting)—because at that time (and up until March 2021) the Trustee

---

come nowhere near providing the type of financial disclosures found in public filings with the SEC, for example. General disclosures that ANConnect sold assets or was going out of business are not a sufficient basis upon which a creditor could have discovered insider transactions such as the Transfers, much less discovered their fraudulent nature.

[15]    *See* JA21.

had only inaccurate and incomplete information concerning the Transfers and the

Appellees were actively resisting the Trustee's efforts to obtain more information.

*See JPMorgan Chase*, 213 A.3d at 1241-42, 1244. Because the Trustee presented

facts supporting his position that the one-year period was not triggered until

ANConnect produced documents in March 2021 revealing that $24 million had been

upstreamed to related entities (following which the Trustee acted promptly in

commencing the 2021 Action), summary judgment should have been denied on  the

Appellees' timeliness  arguments. *See Union Tank Car Co. v. Maxwell*, 2021 WL

2044345, at *7 (S.D. Tex. May 21, 2021) (denying defendants' motion for summary

judgment on timeliness issue, where a previous vague disclosure in another action

did not provide sufficient notice, and plaintiff only learned of the transfers once

defendants "reluctantly and belatedly" produced financial information) (applying §

24.010(a)(1) of TUFTA).

## IV.  The Lower Courts Usurped the Role of the Factfinder to Hold That the Trustee Did Not Act With Reasonable Diligence In Investigating His Claims

Even assuming that Appellees' misstatements during settlement talks were

sufficient to put the Trustee on notice both of the challenged transfers (which were

described as exponentially lower than they actually were) and their fraudulent nature

(nothing was discussed concerning this requirement), the District Court's affirmance

of the Bankruptcy Court's determination that the Trustee "cannot show that he acted

with reasonable diligence in investigating his claims,"[16] was erroneous because it required weighing of evidence and findings as to reasonableness that are squarely within the province of the jury, not the court on summary judgment. *See, e.g.*, *Estate of Ewers*, 695 S.W.3d 603, 622 (Tex. App. 2024) ("the issues of discovery and diligence ordinarily present questions of fact for the factfinder, rather than matters of law for the court"); *Coleman*, 854 A.2d at 842-43 (holding that questions as to whether plaintiff was on inquiry notice or should have conducted a more diligent inquiry could not be resolved as a matter of law, and instead required a trial).

### A.    A Reasonable Jury Could Find That the Trustee Could Not Have Discovered the Transfers Until He Received Discovery in the 2018 Action

In the wake of the September 2018 Settlement Meeting, Attorney Coren "requested that ANConnect, which is a private company with nonpublic finances, support the contention that only one or two million dollars was upstreamed to its parent entities and that it was insolvent by providing supporting financial documents." JA1771, Coren Dec. at ¶ 8. However, "Mr. Maier and Attorney Stein refused to provide any further information and stated that such information would follow only after the Trustee obtained a judgment." *Id.* Appellees' unequivocal refusal to support the contentions they made during the Settlement Meeting served as confirmation of

---

[16]    JA43; *see also* JA25-JA26 (affirming Bankruptcy Court's determination as to reasonable diligence).

Mr. Coren's conclusion that the statements were "incidental puffery typical to negotiation," *id.* at ¶ 9, and left Appellant with nowhere to turn to get the pertinent information.

Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004"), which generally allows a Trustee to issue requests for documents and testimony outside the context of litigation, could not be used to obtain information from Appellees because the Trustee had already commenced litigation in the 2018 Action. Given the broad scope of requests and examinations made under Rule 2004, the rule is unavailable when the examination or production request relates to matters being litigated in a pending adversary proceeding. *See, e.g.*, *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009). The "pending proceeding rule" limits the use of Rule 2004 after an adversary proceeding or other litigation has commenced due to concern that a litigant might receive an unfair advantage in litigation because requests for production and examinations under Rule 2004 lack some of the procedural safeguards that exist for discovery conducted in pending litigation. *See id.* at 51. Accordingly, having already instituted fraudulent transfer litigation against ANConnect in the 2018 Action, information concerning further transfers would clearly have been subject to the pending proceeding rule, and the Trustee was unable to request information through Rule 2004.

That left formal discovery under the Federal Rules of Civil Procedure (as

made applicable by the Federal Rules of Bankruptcy Procedure) in the 2018 Action as the only vehicle under which the Trustee could obtain the requested information from Appellees, and the Trustee employed it. But Appellees actively stonewalled the Trustee's efforts to take that discovery and sought partial summary judgment to avoid it, alleging that discovery was unnecessary and a waste of resources. Appellees' stonewalling of the Trustee's discovery efforts prompted the Trustee's formal request to allow discovery pursuant to Federal Rule of Civil Procedure 56(d). *See* JA180-JA181, Plaintiff's Memorandum in Support of His Request to Allow Discovery Pursuant to Federal Rule of Civil Procedure 56(d) filed in 2018 Action (summarizing the Trustee's efforts to begin discovery, which were rebuffed by ANConnect); JA205-JA207, Coren Dec. from 2018 Action at ¶¶ 4-10 (further describing ANConnect's efforts to stonewall discovery in the 2018 Action). As set forth in the Trustee's request, even as late as April 29, 2020, Appellees' attorneys were using their premature summary judgment motion as an excuse for why discovery could not begin. *See id.*; *see also* JA271 (4/7/20 email from Appellees' counsel stating that ANConnect did not agree that "the parties have held/concluded their scheduling conference or [that] discovery between the parties should commence at this time"); JA280 (4/29/20 email from Appellees' counsel stating that "we fundamentally disagree with . . . your view that discovery can commence

now").[17]

Discovery in the 2018 Action did not begin until after the Bankruptcy Court was forced to intervene, *see* JA180-JA181, and it was not until March 2021, when ANconnect made its document production in the 2018 Action, that the Trustee and his counsel were able to discover that the actual amount upstreamed by ANConnect to its related entities was nearly $24 million. *See* JA1771-JA1772, Coren Decl. at ¶ 10; JA800-JA801, Miller Dep. at 19:6-20:7; JA2180, Homony Dep. at 82:10-13; JA2230-JA2231 (3/25/21 letter from ANConnect attorney conveying "ANConnect's first production"); JA2066-JA2069 and JA2081-JA2083 (documents produced by ANConnect on 3/25/21 as part of its first production that for the first time disclosed to the Trustee the existence and magnitude of the transfers at issue).

Accordingly, the lower courts erred when they held as a matter of law that the Trustee reasonably should have discovered both the magnitude and fraudulent nature of the challenged transfers prior to receiving discovery in the 2018 Action. That determination was not for the lower courts to make; it is one for the jury at trial.

---

[17]    Appellees' continuing effort to hide the ball as to transfers is further demonstrated by discovery conducted in this adversary proceeding, when ANConnect refused to take even the basic step of identifying the transfers it made to its affiliates during the time frame at issue. *See* JA2234-JA2242 at pp. 5-6 (Defendants' blanket objection to interrogatories requesting ANConnect to identify transfers to its affiliates).

**B.** **The Fraudulent Transfers Challenged in the 2018 Action Are Entirely Different and Provide No Support for the Lower Courts' Decision**

The District Court points to the 2018 Action, in which the Trustee asserted different fraudulent transfer claims against ANConnect, as justification for why statements made at the Settlement Meeting should have alerted the Trustee to the additional fraudulent transfer claims brought in this action. *See* JA19, JA24, JA27; *see also* JA40. But this conclusion is flawed, as it makes no logical connection between the fraudulent transfers challenged in the 2018 Action and the fraudulent transfers challenged in the instant action; indeed, given the disparate nature of the claims, no such connection can be made.

The claims in the 2018 Action arise out of the ANConnect Transaction— Alchemy's purchase of video distribution capabilities from ANConnect, with cash payments made by Alchemy to ANConnect totaling over $29 million. *See* JA1793 (ANConnect Transaction Asset Purchase Agreement), JA1867 (describing cash payments). ANConnect knew that Alchemy failed to receive reasonably equivalent value in the ANConnect Transaction, as it internally described the business as "immediately and forever upside down," JA1870, and, on June 29, 2018, the Trustee commenced the 2018 Action seeking, inter alia, to avoid the ANConnect Transaction as a constructive and actual fraudulent transfer. *See* JA70-JA132 (Complaint from 2018 Action).

27

The fraudulent transfer claims advanced in the 2018 Action (and since withdrawn, *see* fn. 1, *supra*)—seeking to avoid the ANConnect Transaction as actually and constructively fraudulent given the extreme disparity in value between the over $29 million cash transferred by Alchemy to ANConnect and the "immediately and forever upside down" business assets transferred by ANConnect to Alchemy—simply bear no resemblance to the claims here, which are based on ANConnect's efforts to place assets beyond the reach of creditors by funneling them to parent entities.

The only connection between the two claims is that the proceeds from the ANConnect Transaction constitute a share of the funds which the Trustee alleged were fraudulently transferred and therefore recoverable in this case. While this connection foreclosed Rule 2004 discovery to inquire as to ANConnect's disposition of the proceeds (as opposed to formal discovery in the 2018 Action), it is insufficient to put the Trustee on notice that any such dispositions may have been fraudulent. That notice came only after discovery in the 2018 Action revealed that the transfers challenged in the instant action were distributions to an affiliate made without consideration.[18]

---

[18]    *See* JA2081-JA2083 (December 13, 2016 email attaching "Analysis for Board discussion 12.13.16.xlsx," stating ANConnect made a total of $23.8 million in "Payments to parent"—*i.e.*, to Anderson Media, ANConnect's parent company); A1083 (stating that ANConnect intended to upstream $23.6 million to Anderson Media "net of loan repayment"); JA2071-JA2073 (anticipating that ANConnect

**V.    The Lower Courts' Decision Will Have A Chilling Effect On Settlement Discussions In This Circuit**

Allowed to stand, the lower courts' decision will have a chilling effect on settlement discussions in bankruptcy courts and other courts in this Circuit and beyond. The judicial system encourages early settlement discussions to unclog judicial dockets and promote the interests of justice, yet bankruptcy trustees and other litigants must now fear that adverse consequences could follow based on statements made during those negotiations. Indeed, Attorney Coren testified that, in this case, he "did not take the statements of [Appellees] to be factual statements, but rather incidental puffery typical to negotiation," a conclusion supported by his "extensive experience representing Trustees in cases similar to the Companion Adversary Proceeding, [where] it is typical for defendants to 'cry poor' during settlement discussions," and where he "represented Trustees who obtained significant financial recoveries from defendants who previously claimed to be judgment proof." JA1771, Coren Dec. at ¶ 9.

Attorney Coren's conclusion that Appellees' statements during settlement talks were mere puffery is further supported by "the relaxed rules concerning candor in the context of settlement discussions." *Id.*; *see also* Delaware Lawyers' Rule of Professional Conduct 4.1, cmt. [2], *available at* https://courts.delaware.gov/

---

would make "[s]pecial payment[s]" totaling $23.5 million to Anderson Media from June 2016-February 2017).

forms/download.aspx?id=160568 (stating that, although a lawyer is generally not allowed to knowingly make a false statement of material fact or law to a third person, "[w]hether a particular statement should be regarded as one of fact can depend on the circumstances. Under generally accepted conventions in negotiation, certain types of statements ordinarily are not taken as statements of material fact. Estimates of price or value placed on the subject of a transaction and a party's intentions as to an acceptable settlement of a claim are ordinarily in this category"); JA1771, Coren Dec. at ¶ 9 n.1 (citing same).

The Bankruptcy Court's decision upends these "generally accepted conventions in negotiation," and sends a message to the bar that settlement discussions need to be approached with trepidation because a party's falsely "crying poor" during those discussions could lead to the subsequent loss of the ability to bring a fraudulent transfer claim, as happened here. Such a result is contrary to the Bankruptcy Code, the Federal Rules of Civil Procedure, and supporting caselaw, which strongly "encourage facilitating the settlement of cases." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010); *see also, e.g.*, *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) ("To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'") (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).

## CONCLUSION

For the reasons described above, this Court should vacate and reverse the District Court's order affirming the Bankruptcy Court's entry of summary judgment in favor of Appellees.

Respectfully submitted,

Dated:  June 30, 2025

_/s/ Steven M. Coren_
Steven M. Coren, Esquire (PA #32140)
COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA  19103
(215) 735-8700

_Counsel for Appellant George L. Miller, Chapter 7 Trustee_

# TAB 1

## CERTIFICATION OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE
## REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.   This brief complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2)(A)(i) because this brief contains 7,144 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.   This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.


Dated: June 30, 2025                      */s/ Steven M. Coren*
                                          STEVEN M. COREN

**CERTIFICATION OF ELECTRONIC FILING AND VIRUS CHECK**

I hereby certify that the electronic copy of this Appellant's Opening Brief is identical to the paper copies filed with the Court.

A virus check was performed on the PDF electronic file of this brief using SentinelOne Agent Version 24.1.5.277, and no viruses have been detected.

Dated: June 30, 2025                    */s/ Steven M. Coren*
                                        STEVEN M. COREN

## CERTIFICATION OF BAR MEMBERSHIP

I hereby certify that I am a member of the Bar of the United States Court of

Appeals for the Third Circuit.

Dated: June 30, 2025                    */s/ Steven M. Coren*
                                        STEVEN M. COREN

# TAB 2

# JOINT APPENDIX
## VOLUMES I - VI

## TABLE OF CONTENTS

| Document Description | D.I.[1] | Page |
|---|---|---|
| **VOLUME I** | | |
| Trustee's Notice of Appeal | D.I. 24 | JA1 |
| District Court Final Order dated March 31, 2025 (Ex. A to Notice of Appeal) | D.I. 23 | JA4 |
| District Court Opinion dated March 31, 2025 (Ex. B to Notice of Appeal) | D.I. 22 | JA6 |
| Bankruptcy Court Memorandum Opinion and Order dated February 13, 2024 (Ex. C to Notice of Appeal) | Adv. D.I. 57 | JA29 |
| **VOLUME II** | | |
| Bankr. D. Del. Adversary No. 18-50633 Docket Entries | | JA44 |
| Bankr. D. Del. Adversary No. 21-51420 Docket Entries | | JA61 |
| D. Del. Case No. 1:24-cv-00243 Docket Entries | | JA67 |
| ***Filings in Bankr. D. Del. Adv. No. 18-50633:*** | | |
| Complaint dated June 29, 2018 | 1st Adv. D.I. 1 | JA70 |
| Memorandum Opinion, denying in part and granting in part ANConnect's motion to dismiss dated September 16, 2019 | 1st Adv. D.I. 84 | JA133 |
| Plaintiff's Memorandum in Support of His Request to Allow Discovery Pursuant to Federal Rule of Civil Procedure 56(d) | 1st Adv. D.I. 151 | JA167 |
| Declaration of Steven M. Coren in Support of Plaintiff's Request to Allow Discovery Pursuant to Federal Rule of Civil Procedure 56(d) | 1st Adv. D.I. 151-1 | JA202 |

[1] As used herein, "D.I." refers to filings in D. Del. No. 1:24-cv-00243, "Adv. D.I." refers to filings in Bankr. D. Del. Adv. No. 21-51420, and "1st Adv. D.I." refers to filings in Bankr. D. Del. Adv. No. 18-50633.

| January 16, 2020 email from Andrew Belli to Defendants' Counsel | 1st Adv. D.I. 151-14 | JA209 |
|---|---|---|
| Anderson Defendants' Initial Disclosures | 1st Adv. D.I. 151-15 | JA215 |
| February 25, 2020 email from David Wender to Trustee's Counsel | 1st Adv. D.I. 151-18 | JA225 |
| February 28, 2020 email from Andrew Belli to Defendants' Counsel | 1st Adv. D.I. 151-19 | JA248 |
| April 3, 2020 email from Andrew Belli to Defendants' Counsel | 1st Adv. D.I. 151-20 | JA254 |
| April 7, 2020 email from David Wender to Trustee's Counsel | 1st Adv. D.I. 151-21 | JA270 |
| April 29, 2020 email from David Wender to Trustee's Counsel | 1st Adv. D.I. 151-22 | JA279 |
| Opinion and Order denying ANConnect's summary judgment motion | 1st Adv. D.I. 241 | JA290 |
| **VOLUME III** | | |
| ***Filings in Bankr. D. Del. Adv. No. 21-51420:*** | | |
| Complaint dated December 29, 2021 Case Bankr. D. Del. 21-51420-JTD | Adv. D.I. 1 | JA298 |
| Memorandum Opinion and Order of the Bankruptcy Court Partly Granting Motion to Dismiss the Trustee's Complaint | Adv. D.I. 20 | JA316 |
| Answer to Complaint | Adv. D.I. 28 | JA339 |
| Defendants' Motion for Summary Judgment | Adv. D.I. 40 | JA356 |
| Memorandum of Law in Support of Defendants' Motion for Summary Judgment | Adv. D.I. 41 | JA358 |
| Declaration of Jay Maier | Adv. D.I. 41-1 | JA394 |
| Excerpts from the Deposition of George Miller dated April 20, 2023 | Adv. D.I. 41-2 | JA752 |
| Excerpts from the Deposition Transcript of Bill Homony dated April 20, 2023 | Adv. D.I. 41-3 | JA761 |

| VOLUME IV | | |
|---|---|---|
| *Filings in Bankr. D. Del. Adv. No. 21-51420 (continued):* | | |
| Miller Deposition Transcript with Exhibits 2 through 5 | Adv. D.I. 45-1 | JA781 |
| Exhibits 6 through 13 to the Deposition of George Miller Dated April 20, 2023 | Adv. D.I. 45-2 | JA1018 |
| Exhibits 15 through 24 to the Deposition of George Miller Dated April 20, 2023 | Adv. D.I. 45-3 | JA1135 |
| VOLUME V | | |
| *Filings in Bankr. D. Del. Adv. No. 21-51420 (continued):* | | |
| Exhibits 25 through 44 to the Deposition of George Miller Dated April 20, 2023 | Adv. D.I. 45-4 | JA1323 |
| Exhibits 45 through 50 to the Deposition of George Miller Dated April 20, 2023 | Adv. D.I. 45-5 | JA1437 |
| Exhibits 51 through 52 to the Deposition of George Miller Dated April 20, 2023 | Adv. D.I. 45-6 | JA1693 |
| VOLUME VI | | |
| *Filings in Bankr. D. Del. Adv. No. 21-51420 (continued):* | | |
| Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment | Adv. D.I. 48 | JA1733 |
| Declaration of Steven M. Coren in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment | Adv. D.I. 48-1 | JA1769 |
| Excerpted pages from 3/11/16 Anderson Media Corporation Minutes of the Meeting of the Board of Directors | Adv. D.I. 48-2 | JA1776 |
| Anderson executive Bill Lardie notes dated May 2014 | Adv. D.I. 48-3 | JA1780 |
| Anderson executive Bill Lardie notes dated 12/22/2014 | Adv. D.I. 48-4 | JA1783 |
| 7/28/15 email from ANConnect CFO/COO Chuck Taylor to Anderson executives Jay Maier and Bill Lardie | Adv. D.I. 48-5 | JA1787 |
| May 7, 2015 Asset Purchase Agreement | Adv. D.I. 48-6 | JA1792 |

| | | |
|---|---|---|
| January 8, 2016 email from Alchemy employee Ryan Meyering to Alchemy employees Rex Bowring and George De La Cruz, listing "Actual Cash Payments" to ANConnect in connection with the APA totaling $29.9 million | Adv. D.I. 48-7 | JA1866 |
| May 28, 2014 email from ANConnect CFO/COO Chuck Taylor to, inter alia, Anderson Finance VP Dan Hetrick | Adv. D.I. 48-8 | JA1869 |
| February 17, 2016 Complaint filed by ANConnect and Anderson Merchandisers in the Superior Court of Delaware (exhibits thereto omitted) | Adv. D.I. 48-9 | JA1874 |
| July 9, 2015 Transition Services Agreement between ANConnect and Alchemy | Adv. D.I. 48-10 | JA1899 |
| Alchemy's Answer with Affirmative Defenses and Counterclaims filed on April 11, 2016 in the Superior Court of Delaware | Adv. D.I. 48-11 | JA1910 |
| ANConnect's Answer and Affirmative Defenses to Alchemy's Counterclaims filed on May 11, 2016 in the Superior Court of Delaware | Adv. D.I. 48-12 | JA1978 |
| Transcript of September 29, 2022 Deposition of Jay Maier as Rule 30(b)(6) designee of ANConnect and Anderson Merchandisers | Adv. D.I. 48-13 | JA2009 |
| August 5, 2016 email from ANConnect CFO/COO Chuck Taylor to, inter alia, Anderson executive Bill Lardie with attachment thereto | Adv. D.I. 48-14 | JA2065 |
| August 5, 2016 email from ANConnect CFO/COO Chuck Taylor to Anderson Director of Internal Audit Boris Popov with attachment thereto | Adv. D.I. 48-15 | JA2070 |
| ANConnect consolidated income statement as of September 30, 2016 | Adv. D.I. 48-16 | JA2074 |
| September 28, 2016 email from Anderson Director of Internal Audit Boris Popov to Anderson Media CFO Jay Maier | Adv. D.I. 48-17 | JA2076 |
| December 13, 2016 email from ANConnect CFO/COO Chuck Taylor to, inter alia, Anderson Media CFO Jay Maier | Adv. D.I. 48-18 | JA2080 |
| Except from ANConnect Independent Auditor's Report as of October 3, 2014 | Adv. D.I. 48-19 | JA2084 |

| Excerpt from January 30, 2015 ANConnect compliance certificate | Adv. D.I. 48-20 | JA2090 |
|---|---|---|
| Excerpt from May 29, 2015 ANConnect compliance certificate | Adv. D.I. 48-21 | JA2092 |
| December 8, 2016 email from ANConnect CFO/COO Chuck Taylor to, inter alia, Anderson Media CFO Jay Maier | Adv. D.I. 48-22 | JA2094 |
| Transcript of April 20, 2023 deposition of William Homony | Adv. D.I. 48-25 | JA2098 |
| Transcript of April 20, 2023 deposition of William Homony (cont.) | Adv. D.I. 48-26 | JA2162 |
| March 25, 2021 letter from Anderson attorney David Wender | Adv. D.I. 48-27 | JA2229 |
| Defendants' March 9, 2023 Responses and Objections to the Trustee's Omnibus First Set of Interrogatories and Second Set of Requests for Production of Documents | Adv. D.I. 48-28 | JA2233 |
| June 22, 2016 email from Anderson Media CFO Jay Maier to ANConnect and Anderson Merchandisers personnel | Adv. D.I. 48-29 | JA2243 |
| Anderson Management Services, Inc.'s Answer to Complaint in *American Media, Inc., et al. v. Anderson Management Services, Inc., et al.*, Bankr. D. Del. Adv. No. 11-53811 | Adv. D.I. 48-30 | JA2245 |
| Defendants' Reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment | Adv. D.I. 49 | JA2296 |
| MEMORANDUM OPINION AND ORDER regarding Defendants' Motion for Summary Judgment | Adv. D.I. 57 | JA2309 |
| 3/13/2024 Transcript of 1/16/24 Hearing Before The Honorable John T. Dorsey United States Bankruptcy Judge | Adv. D.I. 63 | JA2323 |
| ***Filings in D. Del. No. 1:24-cv-00243:*** | | |
| Notice of Appeal and Statement of Election from Bankruptcy Court (exhibit thereto omitted) | D.I. 1 | JA2390 |
| Appellant's Statement of Issues on Appeal and Designation of Record | D.I. 7 | JA2395 |

| Appellees' Designation of Record | D.I. 13 | JA2401 |
|---|---|---|
| Appellant's Brief | D.I. 17 | JA2405 |
| Appellee's Brief | D.I. 19 | JA2435 |
| Appellant's Reply Brief | D.I. 21 | JA2472 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Bankruptcy Appeal |
| OUR ALCHEMY, LLC, *et al.*,[1] | Chapter 7 |
| Debtors. | Bankr. Case No. 16-11596 (MFW) |
| | USBK/DE |

| | |
|---|---|
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC, | Adv. No. 21-51420 (MFW) |
| Appellant, | USBK/DE |
| v. | BAP No. 24-00007 |
| | USBK/DE |
| ANDERSON MEDIA CORPORATION, ANCONNECT, LLC, and ANDERSON MANAGEMENT SERVICES, INC. | Civ. No. 24-243 (CFC) |
| Appellees. | |

### NOTICE OF APPEAL
### TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

**PLEASE TAKE NOTICE** that George L. Miller, chapter 7 Trustee (the "Trustee") for the

bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC, Appellant in the above-

captioned bankruptcy appeal and Plaintiff in the underlying adversary proceeding, by his

undersigned counsel, hereby appeals to the United States Court of Appeals for the Third Circuit

from the final Order issued by Chief Judge Colm F. Connolly of the United States District Court

for the District of Delaware dated March 31, 2025 [D.I. 23][2] (the "Order"), a copy of which is

---

[1] The Debtors are: Our Alchemy, LLC, Case No. 16-11596 and Anderson Digital, LLC, Case No. 16-11597. Pursuant to the Order of Reassignment of Judge [Adv. Bankr. D.I. 65] dated March 24, 2025 the Debtors' jointly administered cases, associated cases, and associated adversary proceedings were reassigned to the Honorable Mary F. Walrath.

[2] Citations to the District Court docket in Civil Action No. 24-243 (CFC) are indicated by "D.I." Citations to the Bankruptcy Court docket in Adversary Case No. 21-51420 (MFW) are indicated by "Adv. Bankr. D.I.".

LEGAL\76726490\2 6010823/00390810

**JA1**

attached hereto as Exhibit "<u>A</u>", and Opinion dated March 31, 2025 [D.I. 22] (the "<u>Opinion</u>"), a copy of which is attached hereto as Exhibit "<u>B</u>", in the above-captioned bankruptcy appeal, which affirmed the Memorandum Opinion and Order dated February 13, 2024 [Adv. Bankr. D.I. 57] (the "<u>Bankruptcy Court Order</u>"), granting Defendants' Motion for Summary Judgment issued by Judge John T. Dorsey of the United States Bankruptcy Court for the District of Delaware, a copy of which is attached hereto as Exhibit "<u>C</u>".

**PLEASE TAKE FURTHER NOTICE** the names of all parties to the Order and Opinion appealed from and the names and addresses, and telephone numbers of their respective attorneys are as follows:

| Party: | Counsel: |
|---|---|
| **George L. Miller, Chapter 7 Trustee** *Appellant* | John T. Carroll , III (DE No. 4060) Cozen O'Connor 1201 North Market Street Suite 1001 Wilmington, DE 19801 Tel:  (302) 295-2028 Fax: (302) 295-2013 Email: jcarroll@cozen.com<br><br>Steven M. Coren Coren & Ress, P.C. Two Commerce Square 2001 Market Street Suite 3900 Philadelphia, PA 19103 Tel: (215) 735-8700 Fax: (215) 735-5170 Email:  scoren@kcr-law.com |

LEGAL\76726490\2 6010823/00390810

JA2

| **Anderson Media Corporation, ANConnect, LLC, and Anderson Management Services, Inc.** *Appellees* | Evelyn J. Meltzer (DE No. 4581) Troutman Pepper Locke LLP Hercules Plaza Suite 1000 1313 N. Market Street Wilmington, DE 19899-1709 Tel: (302) 777-6532 Fax: (302) 421-8390 Email: Evelyn.Meltzer@troutman.com <br><br> David J. Hungeling Hungeling Rubenfield Law 1718 Peachtree Street Suite 599 Atlanta, GA 30309 Tel: (404) 574-2466 Email: david@hungelinglaw.com |
| --- | --- |

Dated: April 7, 2025

Respectfully submitted,

/s/ *John T. Carroll, III*
John T. Carroll, III (DE No. 4060)
**COZEN O'CONNOR**
1201 North Market Street
Suite 1001
Wilmington, DE 19801
Tel: (302) 295-2028
Fax: (302) 295-2013
jcarroll@cozen.com

-and-

Steven M. Coren *(pro hac vice)*
**COREN & RESS, P.C.**
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170
scoren@kcr-law.com

*Counsel for Appellant,*
*George L. Miller, Chapter 7 Trustee*

LEGAL\76726490\2 6010823/00390810

**JA3**

**EXHIBIT "A"**

Order, Chief Judge Colm F. Connolly
United States District Court for the District of Delaware
dated 3/31/2025 [D.I. 23] Civ. No. 24-243 (CFC)

**JA4**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE OUR ALCHEMY, LLC, *et al*., | : | Chapter 7 |
| | : | |
| Debtors. | : | Bankr. No. 16-11596-JTD |

| | | |
|---|---|---|
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC, | : : : : | Adv. No. 21-51420-JTD |
| | : | |
| Appellant, | : | |
| v. | : | |
| | : | Civ. No. 24-243-CFC |
| ANDERSON MEDIA CORPORATION, *et al.*, | : : | |
| | : | |
| Appellees. | : | |

**ORDER**

For the reasons set forth in the accompanying Opinion, it is hereby ORDERED:

1.    The Bankruptcy Court's Memorandum Opinion and Order, *Miller v. Anderson Media Corp. (In re Our Alchemy, LLC)*, 2024 WL 606886 (Bankr. D. Del. Feb. 13, 2024) (Adv. D.I. 57) is AFFIRMED.

2.    The Clerk of the Court is directed to CLOSE Civ. No. 24-243-CFC.

Entered this Thirty-first day of March, 2025.

_____

CHIEF JUDGE

**JA5**

**EXHIBIT "B"**

Opinion, Chief Judge Colm F. Connolly
United States District Court for the District of Delaware
dated 3/31/2025 [D.I. 22] Civ. No. 24-243 (CFC)

LEGAL\76726490\2 6010823/00390810

Case: 1:24-cv-00243-CFC   Document: 24-2   Filed: 03/04/25   Page: 2 of 28 PageID #: 1912
1941

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE OUR ALCHEMY, LLC, *et al.*, | : | Chapter 7 |
| | : | |
| Debtors. | : | Bankr. No. 16-11596-JTD |

---

| | | |
|---|---|---|
| GEORGE L. MILLER, in his capacity as | : | |
| Chapter 7 Trustee for the jointly | : | |
| administered bankruptcy estates of Our | : | |
| Alchemy, LLC and Anderson Digital, LLC, | : | Adv. No. 21-51420-JTD |
| | : | |
| Appellant, | : | |
| v. | : | |
| | : | Civ. No. 24-243-CFC |
| ANDERSON MEDIA CORPORATION, | : | |
| *et al.*, | : | |
| | : | |
| Appellees. | : | |

---

Steven M. Coren, COREN & RESS, P.C., Philadelphia, PA; John T. Carroll, III, COZEN O'CONNOR, Wilmington, Delaware

   *Counsel for Appellant*

David J. Hungeling, HUNGELING RUBENFIELD LAW, Atlanta, Georgia; Evelyn J. Meltzer, TROUTMAN PEPPER HAMILTON SANDERS LLP, Wilmington, Delaware

   *Counsel for Appellees*

## OPINION

March 31, 2025
Wilmington, Delaware

_Cohn J. Cng_
CHIEF JUDGE

## I.    INTRODUCTION

This dispute arises in the chapter 7 bankruptcy cases of Our Alchemy, LLC and Anderson Digital, LLC (together, the "Debtors").  The Chapter 7 Trustee ("Trustee") commenced an adversary proceeding[1] (the "December 2021 Avoidance Action") against defendants Anderson Media Corporation ("Anderson Media"), ANConnect, LLC ("ANC"), and Anderson Management Service, Inc. ("Anderson Management") (collectively, "Appellees"), asserting various claims.  Following the Bankruptcy Court's ruling on Appellees' motion to dismiss, the only remaining claim sought to avoid and recover certain transfers pursuant to the actual fraud provision of the Uniform Fraudulent Transfers Act ("UFTA").[2]  Following discovery, Appellees filed a motion seeking summary judgment on the actual fraud claim, which asserted that the Trustee was in possession of information that put him on inquiry notice of the transfers at issue as early as 2018, and that the applicable

---

[1] The docket of the adversary proceeding, captioned _Miller v. Anderson Media Corp._, Adv. No. 21-51420-JTD (Bankr. D. Del.), is cited herein as "Adv. D.I. __."
[2] The complaint asserted claims under Delaware law.  Adv. D.I. I.  Appellees argued that Texas "has the most significant relationship" to the case, and that a choice of law analysis was required.  The Bankruptcy Court determined that no choice of law analysis was necessary because there is no substantive difference between the applicable laws of Texas and Delaware.  The parties agree.  D.I. 17 at 12 n.8; D.I. 19 at 8 n.15.

limitations period—UFTA's one year savings clause[3]—therefore expired by the

time the Trustee filed his complaint in 2021. The Bankruptcy Court agreed. On

February 13, 2024, the Bankruptcy Court issued its Memorandum Opinion and

Order, *Miller v. Anderson Media Corp. (In re Our Alchemy, LLC)*, 2024 WL 606886

(Bankr. D. Del. Feb. 13, 2024) (Adv. D.I. 57) (the "Order") determining that the

Trustee had failed to demonstrate the existence of a genuine issue of material fact as

to whether the action was brought within one year "after the transfer or obligation

was or could reasonably have been discovered by" the Trustee. 6 Del. Code

§ 1309(1); Tex. Bus. & Com. Code § 24.010(a)(1). The Trustee asserts that

summary judgment should be reversed on the basis that the Bankruptcy Court

improperly usurped the role of factfinder by weighing evidence and making

credibility determinations in granting summary judgment. For the reasons set forth

herein, I will affirm the Order.

## II.   BACKGROUND

Unless otherwise noted, the following facts are undisputed. In 2013, ANC, a

longtime distributor of videos, books, and music, and four affiliates entered into a

---

[3] Under either Texas or Delaware law, a cause of action for actual fraud under the
UFTA is extinguished unless the action is brought within 4 years after the transfer
was made or the obligation was incurred or, *if later, within 1 year after the transfer
or obligation was or could reasonably have been discovered by the claimant*.
6 Del. Code § 1309(1) (emphasis added); Tex. Bus. & Com. Code § 24.010(a)(1)
(same).

JA9

revolving $150,000,000 Loan and Security Agreement wherein Bank of America, N.A., served as Agent ("BofA Loan"). A361-372, Declaration of Jay Maier ("Maier Decl.") at ¶ 7 & Ex. 1 (A373-83). The BofA loan was secured by all of ANC's assets, including those sold to Our Alchemy. *Id.*; A421 § 7.

In July of 2015, Our Alchemy purchased ANC's video and digital assets (the "ANC Transaction"), with Our Alchemy making a cash payment of $29,888,124.40 ("Closing Payment"). On February 17, 2016, ANC filed a complaint against Our Alchemy in Delaware state court[4] (the "Delaware Action"), alleging that Our Alchemy owed ANC post-closing adjustments and certain other payments and compensation in connection with the ANC Transaction. Our Alchemy asserted in the Delaware Action counterclaims for. Among other things, breach of the underlying asset purchase agreement and wrongful withholding of receivables.

On April 29, 2016, Anderson Media acquired the BofA Loan for $14,671,029. Maier Decl. ¶ 17 (A365). Also on April 29, 2016, ANC sold its book distribution business to Readerlink Distribution Services, LLC for net proceeds totaling approximately $56 million and, effective July 8, 2016, ANC sold its music and internet (direct to consumer) business to Alliance Entertainment Holding Corporation for net proceeds totaling approximately $21 million. Maier Decl. at

---

[4] *ANConnect, LLC and Anderson Merchandisers, LLC v. Our Alchemy, LLC*, Case No. N16C-02-152 (Del. Sup. Ct. Feb. 23, 2016).

¶ 8 (A365).  Each of these sales, and ANC's layoff of staff and cessation of

operations, were publicly disclosed in press releases and news articles at or around

the time each transaction closed.  Maier Decl. ¶ 19 (A365-66) and Ex. 7-9 (A699-

708) (press releases and articles).  After April 2017, ANC continued to liquidate its

remaining assets.  *Id.*  Though disputed, Appellees assert that "[a]ll proceeds from

the sale of ANC's assets were used to pay down the BofA Loan, pay fees owed to

Anderson Management and Anderson Merchandisers, and to pay ANC's creditors."

Maier Decl. ¶ 24 (A368).

   On July 1, 2016, the Debtors filed petitions under chapter 7 of the Bankruptcy

Code, and the Delaware Action was stayed.  On June 29, 2018, the Trustee

commenced an adversary proceeding in the Bankruptcy Court against Appellees and

several others, seeking to avoid the ANC Transaction as fraudulent (the "June 2018

Avoidance Action").[5]  In response, on September 13, 2018, Jay Maier, ANC's Chief

Financial Officer, and Grant Stein, ANC's counsel in the June 2018 Avoidance

Action, met with the Trustee, Bill Homony (the Trustee's financial advisor), and

Stephen Coren (counsel to the Trustee), in Philadelphia to discuss the June 2018

Avoidance Action and to explore settlement of the Trustee's claims (the "September

2018 Meeting").  Maier Decl. ¶ 32 (A370).  The parties submitted competing

recollections of the September 2018 Meeting in the form of declarations and

─────────────────────

[5] *Miller v. ANConnect, LLC, et al.*, Adv. Pro. No. 18-50633 (JTD) (Bankr. D. Del.).

deposition testimony.  *See* Maier Decl. ¶¶ 32-35; A718-726, Deposition of George
Miller ("Miller Depo.") at 9:3-13:18 (A720-723); A728-746, Deposition of Bill
Homony ("Homony Depo.") at 77:8-81:24 (A741-745); A783-789, Declaration of
Steven M. ("Coren Decl.") ¶¶ 4-8 (A784-785).  Based on the Trustee's submissions
alone, however, it appears undisputed that, at the September 2018 Meeting,
Mr. Maier disclosed to the Trustee, Mr. Coren, and Mr. Homony, that ANC had
fully liquidated (*see* Homony Depo. 78:12-79:19, 80:9-21-81:8 (A742-745)); that a
portion of the sale proceeds from the ANC Acquisition went to pay down the BofA
Loan (*id.*); and that either "a million dollars or two" (Coren Depo. ¶ 7 (A784-785),
"$1 million or $2 million" (Miller Depo. at 13:13-18), or "a few million dollars"
(Homony Depo. at 81:5-8 (A745)) was transferred or "upstreamed" from ANC to
Anderson Media and Anderson Services (*id.*; Coren Decl. ¶ 7 (A784-785)); and that
when pressed further on ANC's contention that the amount upstreamed were limited
to this amount, Mr. Stein "refused to provide any further information," stating that
"such information would follow only after the Trustee obtained a judgment" (Coren
Decl. ¶ 8 (A785)).

It further appears undisputed that, when the Trustee's counsel took Mr.
Maier's deposition on September 29, 2022, in connection with the June 2018
Avoidance Action, counsel did not ask about transfers from ANC to Anderson
Media or its affiliates.  Maier Decl. ¶ 35 (A371).  The Trustee did not act on this

information until December 29, 2021, when he filed the December 2021 Avoidance

Action, more than four years after the alleged fraudulent Transfers took place.  On

October 11, 2022, the Trustee served discovery requests seeking information related

to ANC's Transfers to Anderson Media and its affiliates—more than four years after

the September 2018 Meeting.  *Id.*; *see also* Maier Decl. Ex. 10 (Trustee's Omnibus

Set of Requests for Production of Documents) (A710-717).

 Following the Bankruptcy Court's ruling on Appellees' motion to dismiss,[6]

the only remaining claim in the 2021 Avoidance Action was the Trustee's actual

fraudulent transfer claim under UFTA (the "UFTA Claim").  Specifically, the

complaint alleges that ANC fraudulently transferred approximately $23.8 million to

affiliated entities in June and August of 2016 (the "Transfers") "with the actual

intent to hinder, delay, and/or defraud its then-current and future creditors, including

the Debtors."  Adv. D.I. 1 at 46-48 (A103-105).  Based on the allegations set forth

in the complaint, it is clear that the Trustee did not commence the December 2021

Avoidance Action within DUFTA's four-year statute of limitations.  After discovery

was completed, Appellees filed a motion for summary judgment on the UFTA

Claim, asserting that the Trustee was in possession of information that put him on

inquiry notice of the Transfers as early as the September 2018 Meeting, and that

---

[6] *Miller v. Anderson Media Corp. (In re Our Alchemy, LLC)*, 642 B.R. 155 (Bankr. D. Del. 2022) (granting in part and denying in part motions to dismiss).

UFTA's one-year savings clause therefore had also expired by the time the Trustee filed his complaint in December of 2021. The Trustee opposed summary judgment on the basis, *inter alia,* that the evidence on which Appellees relied was insufficient to support summary judgment as a matter of law.[7]

The Bankruptcy Court considered whether the statements made at the September 2018 Meeting rendered the UFTA Claim untimely. The Bankruptcy Court determined that "even if I set aside completely the evidence submitted by the Defendants, the Trustee's evidence alone establishes that the Trustee was on notice regarding the potential movement of money by the Defendants that, under the circumstances, should have prompted him to take timely steps to investigate the possibility that he held a claim." *In re Our Alchemy*, 2024 WL 606886, at *5. Accordingly, the Bankruptcy Court held that there was no genuine issue of material fact as to whether the Trustee commenced the December 2021 Avoidance Action within UFTA's one-year savings clause, and entered summary judgment in favor of the Appellees.

On February 22, 2024, the Trustee filed a timely notice of appeal. D.I. 1. The appeal is fully briefed. D.I. 17, 19, 21. No party requested oral argument.

---

[7] The Trustee also asserted that the statements made during mediation of the 2017 action were not admissible under Federal Rule of Evidence 408, and the Bankruptcy Court disagreed. *See In re Our Alchemy*, 2024 WL 606886, at *3-*4. That issue was not addressed in the Trustee's opening brief and is therefore waived.

7

Case 1:24-cv-00243-CFC   Document 24-2 Filed 08/04/25 Page 102 of 122 PageID 920
1949

### III.   JURISDICTION AND STANDARD OF REVIEW

The Order on appeal "end[ed] the litigation on the merits and le[ft] nothing

for the court to do but execute the judgment" and is therefore a final order.  *Riley v.*

*Kennedy*, 553 U.S. 406, 419 (2008) (internal quotations omitted).  The Court has

jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

In reviewing the Bankruptcy Court's Order granting summary judgment, the

Court applies a plenary, or *de novo*, standard of review.  *In re Klaas*, 858 F.3d 820,

827 (3d Cir. 2017); *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197

F.3d 76, 80 (3d Cir. 1999).  Upon *de novo* review, the Court must determine

whether Appellees satisfied their burden of proving that there was "no genuine

dispute as to any material fact" and that they were "entitled to judgment as a matter

of law."  FED. R. CIV. P. 56(a); *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146

(3d Cir. 2016).   A factual dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When a movant's evidence

demonstrates the lack of a genuine issue of material fact, the burden shifts to the

opposing party to demonstrate the existence of a genuine issue for trial.  *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  "[W]here a non-moving party fails

sufficiently to establish the existence of an essential element of its case on which it

bears the burden of proof at trial, there is not a genuine dispute with respect to a

8

**JA15**

material fact and thus the moving party is entitled to judgment as a matter of law."

*Blunt v. Lower Merion Sch. Dist.,* 767 F.3d 247, 265 (3d Cir. 2014). "All

reasonable inferences from the record must be drawn in favor of the nonmoving

party." *MBIA Inc. Corp. v. Royal Indem. Co.,* 426 F.3d 204, 209 (3d Cir. 2005).

## IV.    ANALYSIS

The Trustee argues that the Bankruptcy Court usurped the role of the

factfinder and erred when it held as a matter of law that (i) misstatements made

during the Settlement Meeting were sufficient to put the Trustee on notice of

potential claims; and (ii) the Trustee did not act with reasonable diligence in

investigating his claims. *See* D.I. 17 at 1, 11.

### A.    The Discovery Rule

Tracking the language of UFTA, under either Delaware or Texas law, a cause

of action for actual fraud is extinguished unless the action is brought within 4 years

after the transfer was made or the obligation was incurred or, ***if later, within 1 year***

***after the transfer or obligation was or could reasonably have been discovered by***

***the claimant.***  6 Del. Code § 1309(1) (emphasis added); Tex. Bus. & Com. Code

§ 24.010(a)(1) (same).

Here, it is undisputed that the alleged fraudulent transfers occurred in 2016—

more than four years before the Trustee commenced the December 2021 Avoidance

Action.  Thus, to be timely, the UFTA claim must have been brought within "one

9

**JA16**

year after the transfer[s] … [were] or could reasonably have been discovered" by the

Trustee.  This provision, often referred to as the "discovery rule," defers accrual of a

cause of action until the claimant knows, or through the exercise of reasonable

diligence or care, could have discovered the fraudulent nature of the transfers for

which it seeks relief.  *See JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211,

1240 (Del. Ch. 2019) (canvassing case law); *Zenner v. Lone Star Striping Paving,

L.L.C.*, 371 S.W.3d 311, 315 (Tex. Ct. App. 2012); *Duran v. Henderson*, 71 S.W.3d

833, 839 (Tex. App. 2002) (citing *Ruebeck v. Hunt,* 142 Tex. 167, 176 (1943)).

"[T]he discovery rule requires a plaintiff to seek information about his injuries and

their cause once he is apprised of facts that would make a reasonably diligent person

seek information." *Pirtle v. Kahn*, 177 S.W.3d 567, 571 (Tex. Ct. App. 2005).

    "Generally, the plaintiff bears the burden of showing that the discovery rule

tolls the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014).

### B.    The Trustee Did Not Carry His Burden of Showing the UFTA Claim Was Timely Under the Discovery Rule

    Here, it is undisputed that no later than September 2018, the Trustee and Mr.

Homony personally gained knowledge that ANC transferred millions of dollars to

its affiliates and the payments' circumstances (*i.e.*, the liquidation of ANC's assets)

sufficient to prompt him to investigate further.  The essential facts, established by

the Trustee's own evidence, are undisputed, namely that (1) ANC met with him and

his legal counsel on September 13, 2018 in Philadelphia and (2) ANC disclosed at

10

**JA17**

this meeting that it had upstreamed several million dollars to Anderson Media and its affiliates.[8]  The Trustee also does not dispute that ANC disclosed at the September 2018 Meeting that it had already sold all of its operating assets and ceased operations.[9]  Thus, it is undisputed that the Trustee knew these facts more than one year (in fact, more than three years) before filing the complaint in the December 2021 Avoidance Action.   Because these undisputed disclosures alone would prompt a reasonably diligent creditor to investigate whether its right to payment was threatened, the Bankruptcy Court held that the one-year saving's clause did not attach to the UFTA Claim.

The Trustee introduced undisputed facts that further showed that the Trustee had inquiry notice of the UFTA Claim.  In its Order, the Bankruptcy Court explained how "the Trustee's evidence alone establishes that the Trustee was on notice regarding the potential movement of money by the Defendants that, under the circumstances, should have prompted him to take timely steps to investigate the

---

[8] *See* Maier Decl. at ¶ 34 (A370) ("I disclosed that the sales proceeds from the ANC Acquisition went to pay down the BofA Loan.  I also disclosed that Anderson Media and Anderson Management received several million dollars from ANC."); Coren Decl. at ¶ 7 (A784-85) ("One of my specific concerns given the large amount of cash paid to ANConnect as part of the ANConnect Transaction (over $29 million) was whether ANConnect had upstreamed any monies to any of its related entities. In response to an inquiry about upstreaming, Mr. Maier and [ANConnect] Attorney [Grant] Stein stated that a small amount was transferred, saying something to the effect that the amount transferred was only "a million dollars or two."); *accord* Miller Depo. at 13:12-16 (A723); Homony Depo. at 80:17-21, 81:5-8 (A744-45).
[9] A370, Maier Decl. ¶ 34.

possibility that he held a claim." *In re Our Alchemy*, 2024 WL 606886, at *5.

These facts included that: (a) the Trustee had already filed suit against ANC for

alleged fraudulent transfers arising out of the ANC Transaction (A58-A120, 2018

Complaint); (b) the Trustee's counsel was concerned whether ANC had transferred

"any monies" to "any of its related entities" (Cohen Decl. ¶ 7 (A784-85)); (c) Mr.

Maier told the Trustee either "a few million dollars" or "a million dollars or two"

had been transferred by ANC to its affiliates (*id.*; Miller Depo. at 13:12-16 (A723);

Homony Depo. at 81:7-8 (A745); and (d) Mr. Maier and Mr. Stein refused to

provide any further information on the transfers absent a judgment.[10] Based on

these undisputed facts, the Bankruptcy Court concluded that "there can be no

reasonable debate about whether the revelations made at the September 2018

Meeting that more transfers had been made should have set off alarm bells" and the

additional fact that ANC would not provide any more details on the transfers

disclosed at the Meeting without a judgment, "should have solidified his concerns

… rather than alleviated them." *In re Our Alchemy*, 2024 WL 606886, at *6.

Case law supports the Bankruptcy Court's determination. *See Pirtle*, 177

S.W.3d at 571 ("the discovery rule requires a plaintiff to seek information about his

---

[10] Coren Decl. ¶¶ 7-8 (A784-85) ("When the Trustee and I attempted to drill down into specifics about ANConnect's finances, we were met with stonewalling by Mr. Maier and Attorney Stein … Mr. Maier and Attorney Stein refused to provide any further information and stated that such information would follow only after the Trustee obtained a judgment.").

injuries and their likely cause once he is apprised of facts that would make a

reasonably diligent person seek information"); *Basic Capital Mgmt. v. Dynex*

*Capital, Inc.*, 976 F.3d 585, 591 (5th Cir. 2020) ("Upon hearing that a defendant no

longer has any assets, especially one being sued for millions of dollars, a reasonable

plaintiff would make some sort of inquiry into the situation.  And since discovery in

the state-court litigation was ongoing when the deposition occurred, asking a few

follow-up questions at the deposition, for example, would likely have borne fruit.").

## C.    The Trustee's Sufficiency of Notice Argument is Unavailing

The Trustee argues that the Bankruptcy Court erred by holding that

misstatements made during the September 2018 Meeting put the Trustee on notice

of potential claims.  D.I. 17 at 13-19.  According to the Trustee, ANC's disclosures

did not reveal the "magnitude" of the payments, were not "sufficient" to file a fraud

claim, or were somehow "incomplete."  *Id*. at 18-19, 22.  The Trustee points to his

testimony together with that of Mr. Homony and Mr. Coren's declaration, all of

which, he contends, supports Appellees' disclosure of the upstreaming of only "$1

million or $2 million" or "a few million dollars," and "refute[s] Appellees'

assertions that they sufficiently informed the Trustee or his counsel of the Transfers

or their magnitude."  D.I. 17 at 13.  This testimony, the Trustee asserts, "shows that

the truth concerning the magnitude of the Transfers was concealed by

misrepresenting the amounts upstreamed as relatively minor."  *Id.* at 13-14.  It was

13

not until 2021 that the Trustee learned that Defendants had actually transferred nearly $24 million, he contends, at which point, he acted promptly in filing the action.

I agree with the Bankruptcy Court that "[t]hat is not how the discovery rule works." *In re Our Alchemy,* 2024 WL 606886 at *6. As the Bankruptcy Court properly recognized, based on the Trustee's evidence and assertions alone, the fact that ANC disclosed that millions of dollars had been transferred to affiliates was sufficient as a matter of law to start the one-year period even if the full amount of the transfers was left to be determined. *In re Our Alchemy*, 2024 WL 606886, at *5. "A plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's application, so long as the plaintiff discovers or should have discovered that he was injured." *Amo Dev., LLC v. Alcon Vision, LLC*, 2022 WL 17475479, at *6 (D. Del. Dec. 6, 2022) (quoting *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015)) (rejecting argument that the information at plaintiff's disposal "did not provide a meaningful window into the full extent of the copying reflected in [defendant's] source code"); *see also Kach v. Hose*, 589 F.3d 626, 635 (3d Cir. 2009) (holding that statute of limitations begins to run "even though the full extent of the injury is not then known or predictable") (citations omitted); *Duran*, 71 S.W.3d. at 839 ("[TUFTA's] discovery rule provides that a claim for fraud does not accrue, and thus the limitation period does not begin to run, until the fraud is

Case: 2:24-cv-00023-CEC   Document: 224-2   Filed: 03/04/25   Page 72 of 72   PageID #: 1927
1956

discovered, or in the exercise of reasonable diligence should have been discovered.").

As the Bankruptcy Court also explained: "While the Trustee makes much of the fact that the information conveyed at the [September 2018] meeting would not have been sufficient under the applicable rules of civil procedure for him to file a complaint for fraudulent transfer, that is not relevant." *In re Our Alchemy*, 2024 WL 606886, at *5. Rather, "[t]he limitations period begins when a party becomes aware of information that would prompt a reasonable person to conduct an inquiry." *Id.* Indeed, "plaintiffs are on inquiry notice when they have sufficient knowledge to raise their suspicions to the point where persons of ordinary intelligence and prudence would commence an investigation that, if pursued would lead to the discovery of the injury." *Pomeranz v. Museum Partners, L.P.*, 2005 WL 217039, at *3 (Del. Ch. Jan. 24, 2005). "Under the inquiry notice standard, [the Trustee was] required to file [his] claims no more than one year after 'persons of ordinary intelligence and prudence would have facts sufficient to put them on inquiry which, *if pursued*, would lead to the discovery of the injury' to file their claim." *Burkhart v. Genworth Fin., Inc.*, 250 A.3d 842, 859-60 (Del. Ch. 2020) (quoting *In re Dean Witter*, 1998 WL 442456, at *7 (Del. Ch. July 17, 1998) (emphasis in original); *see also In re Transamerica Airlines, Inc.*, 2006 WL 587846, at *5-6 (Del. Ch. Feb. 28, 2006) (refusing to apply the discovery rule where previously discovered information

15

Case: 1:24-cv-00023-GEC Document 24-2 Filed 03/04/25 Page 18 of 22 PageID #: 1928
1957

should reasonably have been expected to cause a person in the Plaintiff's shoes to conduct an inquiry). Here, the Trustee was in possession of information, which, if pursued, would have led to the discovery of the Transfers.

The Trustee relies on the *JPMorgan Chase* decision which, according to the Trustee, addressed "analogous facts" and "establishes that the Trustee's prompt action upon learning the "full magnitude" of the Transfers satisfied the discovery rule. *See* D.I. 17 at 16. In *JPMorgan Chase Bank*, the plaintiff asserted actual fraudulent transfer claims under DUFTA to avoid dividend payments made to defendant's stockholders. The defendant moved to dismiss on the basis that the claims were untimely. *See JPMorgan Chase Bank*, 213 A.3d at 1238. The Court of Chancery rejected these arguments, holding that the claims to avoid the dividends were timely under the one-year savings clause in 6 Del. C. § 1309(1) because, prior to the one-year period, the plaintiff knew only that "some dividends" had been paid over the course of several years. *Id.* at 1241.

*JPMorgan Chase* focused on an issue of first impression and held that the one-year discovery period starts ***not*** when the ***mere existence*** of an allegedly fraudulent transfer is or could reasonably have been discovered, but rather when the ***fraudulent nature*** of the transfer was or could reasonably have been discovered. *See JPMorgan Chase Bank*, 213 A.3d at 1216, 1240. The Court held that "the central question under Section 1309(1) is … when the plaintiff discovered or

16

reasonably could have discovered the facts that caused it to file the lawsuit, *i.e.*, not just that a transfer had occurred but that the transfer was fraudulent in nature." *Id.* at 1239. While some of the facts in this dispute are similar to those in *JPMorgan Chase*, others are not. There, as here, the defendant was not a public company and its financial records were not available. Similarly, the plaintiff there had notice of "some" payments. There, however, the court held that the testimony at issue, conveying to plaintiff that defendant "had issued some dividends" was insufficient to make plaintiff "aware of the scope" of the payments or of Defendants' "financial condition at the time so as to put [plaintiff] on notice that the dividends may have been fraudulent in nature," and defendant employed "obstructionist tactics" to preclude its witnesses from answering questions intended to elicit information regarding defendants' "assets, financial health, [and] cash position." *See id.* at 1241. Unlike the *JPMorgan Chase* case, however, here Appellees' financial condition was disclosed; their businesses had been liquidated and the entities were winding down. Moreover, here, as the Bankruptcy Court observed, "at the time the Trustee received the information in question, he was already in the midst of a lawsuit in which he had alleged the Defendants were making transfers of a fraudulent nature. Given that fact, it is unreasonable for the Trustee to claim that he should not be charged with knowledge that these new transfers might also be of a fraudulent nature." *In re Our Alchemy*, 2024 WL 606886, at *6.

17

Case: 2:24-cv-00023-EEC   Document: 24-2  Filed: 03/04/25  Page: 20 of 22  PageID #: 1930
1959

Here, the disclosures at the September 2018 Meeting were made in a different context and went beyond the information made available to the plaintiff in *JPMorgan Chase*. The *JPMorgan* decision is distinguishable and does not require a different outcome.

### D.    The Bankruptcy Court Did Not Improperly Weigh Evidence or Make Credibility Determinations

The Trustee also argues that summary judgment was erroneous because "[r]esolution of the disputed issues of fact relating to the disclosures at the [September 2018] Settlement Meeting required the weighing of evidence and credibility determinations that the Bankruptcy Court was not permitted to make on summary judgment." D.I. 17 at 14. "Acknowledging that there was conflicting testimony concerning the parties' discussions at the Settlement Meeting, the Bankruptcy Court erred when it rejected the Trustee's version of events and held that misstatements made during a settlement discussion were sufficient as a matter of law to put him on notice of a potential claim." *Id.* The Trustee contends that "it was for the jury to weigh the parties' credibility and to make factual determinations such as whether the Appellees' statements at the Settlement Meeting were misleading, whether such statements would put a reasonable plaintiff on notice of the Transfers and their fraudulent nature ..." *Id.* Similarly, the Trustee argues that the Bankruptcy Court's determination that "the Trustee cannot show that he acted with reasonable diligence in investigating his claims," *In re Our Alchemy*, 2024 WL

18

606886, at *7, was erroneous because it "required weighing of evidence and findings as to reasonableness that are squarely within the province of the jury, not the court on summary judgment." *Id.* at 19-23.

The Trustee's argument is misplaced. A court may determine whether the discovery rule applies as a matter of law "where the facts are so clear that reasonable minds cannot differ." *Santander,* 2020 WL 42724, *6. The Bankruptcy Court did not weigh competing evidence (or make any credibility determinations) to determine whether the Transfers were or could reasonably have been discovered by the Trustee. Rather, in reaching its conclusion, the Bankruptcy Court "set aside" Appellees' evidence and competing version of events altogether, and held, based on the Trustee's evidence and assertions alone, that by virtue of the information the Trustee admitted to receiving at the September 2018 Meeting, the purported fraudulent Transfers at issue were "or could reasonably have been discovered by the [Trustee]." *In re Our Alchemy,* 2024 WL 606886, at *5 ("Here, even if I set aside completely the evidence submitted by [Appellees], the Trustee's evidence alone establishes that the Trustee was on notice regarding the potential movement of money by the Defendants that, under the circumstances, should have prompted him to take timely steps to investigate the possibility that he held a claim.")

The cases cited by the Trustee do not require a different outcome. The Trustee cites *Santander Bank, N.A. v. Branch Banking & Tr. Co.*, 2020 WL 42724,

at *6 (M.D. Pa. Jan. 3, 2020), in which the court denied summary judgment under Pennsylvania UFTA's one-year discovery rule where parties presented "competing evidence" and "reasonable fact finders could differ" as to when plaintiff could reasonably have discovered defendant's fraud.  In *Santander Bank,* the decision turned on when plaintiff had knowledge of the fact of, rather than the amount of, the alleged fraud.  *Santander Bank*, 2020 WL 42724 at *6.  In *Union Tank Car Co. v. Maxwell*, 2021 U.S. Dist. LEXIS 96795, *21 (S.D. Tex. May 21, 2021), the court held that inquiry notice did not arise as a matter of law out of a "yes" response to a single question (whether defendant had engaged in any significant asset transfers).  Appellees' disclosures here went beyond the more limited information provided in that case, including Appellees' disclosure of millions of dollars in transfers to affiliates in the context of its liquidation—disclosures made in the context of a meeting to discuss the settlement of another alleged fraudulent transfer.

## V.   CONCLUSION

As an essential element of his case, the Trustee bore the burden of "showing that the discovery rule toll[ed] the statute of limitations."  *Schmidt*, 770 F.3d at 251.  "[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law."  *Blunt,* 767 F.3d at 265.  The Trustee has

failed to demonstrate any error in the Bankruptcy Court's determination that no

genuine issue of material fact existed for trial that the UFTA Claim was time-barred.

Accordingly, I will affirm the Order.

The Court will issue a separate Order consistent with this Opinion.

# EXHIBIT "C"

Memorandum Opinion and Order, Judge John T. Dorsey
United States Bankruptcy Court for the District of Delaware
dated 2/13/2024 [Adv. Bankr. D.I. 57] Adv. No. 21-51420 (MFW)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| OUR ALCHEMY, LLC, *et al.*, | ) | Case No. 16-11596 (JTD) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | |
| GEORGE L. MILLER in his capacity as | ) | |
| Chapter 7 Trustee for the jointly administered | ) | |
| bankruptcy estates of Our Alchemy, LLC and | ) | |
| Anderson Digital, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 21-51420 (JTD) |
| | ) | |
| ANDERSON MEDIA CORPORATION, *et al.* | ) | |
| | ) | |
| Defendants. | ) | **Re:  D.I. 41** |

## MEMORANDUM OPINION AND ORDER

Plaintiff, George L. Miller, the Chapter 7 Trustee (the "**Trustee**") for the jointly administered bankruptcy estates of debtors Our Alchemy, LLC ("**Our Alchemy**") and Anderson Digital, LLC (the **Debtors**"), commenced this adversary proceeding against defendants Anderson Media Corporation ("**Anderson Media**"), ANConnect, LLC ("**ANC**"), and Anderson Management Services, Inc. ("**AMS**") (collectively "**Defendants**") asserting claims for fraudulent transfer, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty.[1]  Following my ruling on Defendants' motion to dismiss, the only remaining claim is Count I, which seeks to avoid and recover certain transfers pursuant to the actual fraud provision of the Delaware Uniform Fraudulent Transfers Act ("**DUFTA**").[2]  Defendants filed the instant motion seeking

---

[1]  Complaint, Adv. D.I. 1.
[2]  Adv. D.I. 20, Opinion and Order dated June 27, 2022.

**JA30**

summary judgment on the remaining claim (the "**Motion**").[3]   For the reasons set forth below, the Motion is granted.

**JURISDICTION AND VENUE**

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. § 1409(a).

**BACKGROUND**

In July of 2015, Our Alchemy purchased certain assets from ANC (the "**ANC Transaction**").  Not long after, on February 17, 2016, ANC and Anderson Merchandisers filed a complaint against Our Alchemy in Delaware state court (the "**Delaware Action**"), alleging that Our Alchemy owed ANC post-closing adjustments and certain other payments and compensation in connection with the ANC Transaction.  Our Alchemy asserted counterclaims in the Delaware Action for breach of the ANC Transaction's asset purchase agreement and for wrongful withholding of receivables owed to Our Alchemy.[4]

On July 1, 2016, Debtors filed their respective petitions under Chapter 7 of the Bankruptcy Code.  On June 29, 2018, the Trustee commenced an adversary proceeding in this Court against the Defendants and several others, seeking to avoid the ANC Transaction as fraudulent (the "**2018 Action**").[5]

On December 29, 2021, while the 2018 Action remained pending, the Trustee commenced this action, alleging that in June of 2016, while ANC was winding down operations,

---

[3]  Adv. D.I. 40.  See also Memorandum of Law in Support of the Defendants' Motion for Summary Judgment, Adv. D.I. 41 ("Opening Br."); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion, Adv. D.I. 48 ("Opposition Br."); Defendants' Reply to Plaintiffs' Opposition, Adv. D.I. 49.
[4]  *Id*. at 8. Because of Our Alchemy's bankruptcy filing, the Delaware Action has been stayed pursuant to 11 U.S.C. § 362.
[5]  Case No. 18-50633.

ANC intentionally made several transfers to insiders in order to defraud known creditors. Specifically, the Complaint alleges that ANC fraudulently transferred approximately $23.8 million to affiliated entities in June and August of 2016 "with the actual intent to hinder, delay, and/or defraud its then-current and future creditors, including Debtors (the "**Transfers**").[6]

Defendants argue that they are entitled to summary judgment on the Trustee's sole remaining claim on the grounds that it is time-barred.[7]  Specifically, Defendants argue that the Trustee was in possession of information that put him on inquiry notice of the Transfers as early as 2018, and that the applicable limitations period therefore expired by the time the Trustee filed his complaint in 2021.  In response, the Trustee argues that the evidence on which Defendants rely is: (1) inadmissible pursuant to Federal Rule of Evidence 408; and (2) insufficient to support judgment as a matter of law.

## ANALYSIS

### I.    LEGAL STANDARD

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056; *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  A genuine dispute of material fact exists only if a reasonable trier of fact could enter a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The Court's role is to "determine whether there is a genuine issue for trial." *Id.* at 249.  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

---

[6] Complaint at 11-14.

[7] Defendants also argue that the Trustee does not have sufficient evidence to establish actual fraud, but because I can resolve the Motion on the first ground, I need not address that argument.

When a movant's evidence demonstrates the lack of a genuine issue of material fact, the burden shifts to the opposing party to demonstrate the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 327.

## II.   DISCUSSION

### A.   Choice of Law

As a preliminary matter, Defendants argue that the Court must perform a choice of law analysis because while the Trustee has pled his claims under Delaware law, Texas has "the most significant relationship" to this case, and thus Texas law must apply.  The Trustee disagrees with Defendants' conclusions regarding the "most significant relationship" test but further points out that no choice of law analysis is necessary because there is no substantive difference between the applicable laws of Texas and Delaware.  I agree.

The first step in a choice of law analysis is to "determine if there is an actual conflict between competing state laws." *In re Am. LaFrance, LLC*, 461 B.R. 267, 272 n.5 (Bankr. D. Del. 2011).  "If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007); *see also, e.g.*, *Mervyn's Holdings*, 426 B.R. at 496 n.6 (declining to decide which of three states' laws applied to fraudulent transfer claims when they had all "similarly adopted the UFTA, and therefore the result is the same regardless of the choice of law issue").  Here, Delaware and Texas have enacted identical extinguishment provisions in their respective versions of the Uniform Fraudulent Transfer Act.  Under both the Delaware Uniform Fraudulent Transfer Act ("**DUFTA**") and the Texas Uniform Fraudulent Transfer Act ("**TUFTA**"), a party asserting a claim for actual fraud must do so "within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably

4

have been discovered by the claimant."  6 Del. C. 1309(1); Tex. Bus. & Com. Code §

24.010(a)(1).  Because the parties have not identified a difference between the laws of Texas and

Delaware that is outcome determinative here, I do not need to decide which state's law applies to

resolve the Motion.

### B.  Applicability of Federal Rule of Evidence 408

A second preliminary matter, raised by the Trustee, is whether the evidence on which the

Defendants rely is admissible.[8]  In support of their assertion that the Trustee's claim is time-

barred, Defendants have submitted testimony regarding statements made at a meeting on

September 13, 2018 (the "**2018 Meeting**") held for the purpose of discussing a possible

settlement of the claims asserted in the 2018 Action.  The Trustee argues that statements made at

the 2018 Meeting were made in an attempt to settle the Trustee's claims and are, therefore,

inadmissible pursuant to Federal Rule of Evidence 408(a).  I disagree.

Although Rule 408 does provide that evidence of "conduct or a statement made during

compromise negotiations about the claim" is not admissible "either to prove or disprove the

validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a

contradiction[,]" it also provides that "[t]he court may admit this evidence for another purpose,

such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving

an effort to obstruct a criminal investigation or prosecution."  Fed. R. Evid. 408.  Here, the

statements made during the 2018 Meeting do not qualify for protection under Rule 408.  They

are not being offered to prove an element of the claim or to impeach a prior statement but are

---

[8] Rule 56 permits the use of inadmissible evidence at the summary judgment stage, so long as it is capable of being admissible at trial.  *Giuliano v. Ins. Co. of the State of Pa. (In re LTC Holdings, Inc.)*, 596 B.R. 797, 802 & n.16 (Bankr. D. Del. 2019) (quoting *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016)).

instead being offered: (1) to establish plaintiff's knowledge for the purpose of assessing the

timeliness of his claim; and (2) in an entirely different case than the one that was the subject of

the settlement discussions.  They therefore fall within the exception set forth within Rule 408(b).

*Westwide Winery, Inc. v. SMT Acquisitions, LLC*, 511 F. Supp. 3d 256, 266 (E.D.N.Y. 2021)

("Offering settlement negotiations 'for another purpose' includes offering them in a claim

different from the one subject to the negotiations."); *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*,

111 F.3d 1284, 1293-94 (6th Cir. 1997) ("Rule 408 only bars the use of compromise evidence to

prove the validity or invalidity of the claim that was the subject of the compromise, not some

other claim") (quoting 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal

Practice and Procedure: Evidence § 5314 (1st ed. 1980)); *see also, e.g., Ellis v. Buzzi

Unicem USA*, 1:06CV96, 2007 U.S. Dist. LEXIS 36371, 2007 WL 1464594 (E.D. Tenn. May 16,

2007), *aff'd*, 293 F. App'x 365 (6th Cir. 2008) (admitting evidence of settlement discussion

"[b]ecause this evidence is being offered for another purpose-to establish Plaintiff's prima facie

case on another cause of action"); *Kraft v. St. John Lutheran Church*, 414 F.3d 943, 947 (8th Cir.

2005) (finding no abuse of discretion in district court's consideration of settlement negotiations

for the purpose of establishing when plaintiff became aware of his injuries for statute of

limitations purposes);  *B & B Hardware, Inc. v. Fastenal Co.*, 688 F.3d 917, 920 (8th Cir. 2012)

(finding no abuse of discretion where district court admitted a draft complaint attached to a

demand letter because "the draft complaint was admitted for the purpose of establishing when

the statute of limitations began to run, which is separate from establishing the elements of the

underlying breach of contract claim").

     The sole case on which the Trustee relies for his position does not change this result.  In

*Behlau v. Tiger Tiger Prods., LLC*, 2021 U.S. Dist. LEXIS 48080 (D. N.H. Mar. 16, 2021), the

Court held that statements made in a settlement letter were inadmissible under Rule 408 where defendant was attempting to use the statements to establish that the statute of limitations had run. *Behlau* is distinguishable, however, because the statements at issue were not only being offered to prove that the claim was time-barred, but also to impeach the plaintiff's statements regarding an amendment to the agreement that was the subject of the dispute. *Id.* at *9 -10 ("Tiger uses the statement to impeach Behlau's evidence that the agreement was not amended *and* to show that the statute of limitations bars the claim. That is not a permissible use under Rule 408.") (emphasis added). In *Behlau*, because the amendment of the agreement would have meant that the loan term was extended, admission of the statements at issue would have both proved the statute of limitations issue and disproved an element of the plaintiff's claim. The same cannot be said here.

For these reasons, the statements made at the 2018 Meeting are admissible under Rule 408.

### C. **Application of the Discovery Rule**

Having determined that the statements made at the September 2018 Meeting are properly before me, I now consider whether they render the Trustee's claims untimely.

As noted above, where a party's fraudulent transfer claim is based on actual fraud, both DUFTA and TUFTA provide for a one-year extension of the limitations period in certain circumstances. 6 Del. Code § 1309(1); Tex. Bus. & Com. Code § 24.010(a)(1). Frequently referred to as the "discovery rule," this provision extends the time in which a party may file a claim by one year after the plaintiff knew or could have reasonably discovered the transfer and its fraudulent nature. *Miller v. Anderson Media Corp. (In re Our Alchemy, LLC)*, 642 B.R. 155, 163 (Bankr. D. Del. 2022). "Generally, the plaintiff bears the burden of showing that the

discovery rule tolls the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014).

Defendants argue that the Trustee was in possession of information that should have alerted him to the possibility that he held a claim as early as 2018. In support of this position, Defendants submitted the testimony of Jay Maier, Chief Financial Officer of defendant Anderson Media.[9] Mr. Maier testified that he attended the 2018 Meeting to explore potential settlement of the Trustee's claims.[10] During the meeting, Mr. Maier disclosed that ANC sold its operating assets in 2015 and 2016 and had ceased operations by 2017. He further noted that Anderson Media and Anderson Services received several million dollars from ANC.[11] Mr. Maier testified that he made these disclosures so that the Trustee would understand that even if he were successful in the prosecution of his claims against ANC, there were limited assets to satisfy a judgment. Mr. Maier stated that he answered the questions asked of him at the 2018 Meeting and was not asked any questions about the transfers at his deposition.[12] Defendants argue that Mr. Maier's testimony establishes that the Trustee was on inquiry notice regarding possible fraudulent transfers from ANC to its affiliates.

In response, the Trustee sets forth his own version of the facts through the testimony of Steven Coren, the Trustee's counsel, who testified that, "Mr. Maier stated that ANConnect was 'judgment proof,'" after which:

> 7. [T]he Trustee and [Attorney Coren] attempted to drill down into specifics about ANConnect's finances, [and] were met with stonewalling . . . . In response to an inquiry about upstreaming, Mr.Maier and [ANConnect] Attorney [Grant] Stein stated that a small amount was transferred, saying something to the effect that the amount transferred was only "a million dollars or two."

---

[9] Declaration of Jay Maier, Opening Br., Exhibit A.
[10] *Id*. ¶ 32.
[11] *Id*. ¶ 34.
[12] *Id.*

8

JA37

8. [Attorney Coren] requested that ANConnect, which is a private company with nonpublic finances, support the contention that only one or two million dollars was upstreamed to its parent entities and that it was insolvent by providing supporting financial documents. Mr. Maier and Attorney Stein refused to provide any further information and stated that such information would follow only after the Trustee obtained a judgment.

9. In [Attorney Coren's] extensive experience representing Trustees . . ., it is typical for defendants to "cry poor" during settlement discussions, and [Attorney Coren has] represented Trustees which obtained significant financial recoveries from defendants who previously claimed to be judgment proof. Given this, the inadmissible nature of settlement discussions, and the relaxed rules concerning candor in the context of settlement discussions, [Attorney Coren] did not take the statements of Mr. Maier and Attorney Stein to be factual statements, but rather as incidental puffery typical to negotiation.

10. It was not until March 2021, when ANconnect made its document production in the Companion Adversary Proceeding, that the Trustee and [Attorney Coren] discovered that the actual amount upstreamed by ANConnect to its related entities was not one or two million dollars, as suggested by Attorney Stein and Mr. Maier during the September 2018 meeting, but was in fact nearly $24 million, an exponentially higher amount.[13]

The Trustee further argues that Mr. Coren's recollection of the meeting is corroborated by the deposition testimony of the Trustee and of William Homony, a partner at Miller Coffey Tate LLP, the Trustee's accountants and bankruptcy consultants. *See* Opposition Br., Ex. V, Miller Dep. at 10:19-11:9, 13:5-19:19 (the Trustee testifies that ANConnect's attorney "said that there were certain minor transfers. . . you know, $1 million or $2 million or something like that. . . . he never said $29 million. Never. . . . I asked for the documentation. And I never got it. So, in my opinion, it was all posturing, and they didn't have any evidence to support that."); Opposition Br., Ex. W, Homony Dep. at 77:19-78:5, 80:9-82:13 (Homony testifies that "I only recall Grant saying that in connection with the up-streaming comment, we

---

[13] Opposition Br. at 26, quoting Declaration of Steven M. Coren ("**Coren Decl.**"), Opposition Br., Ex A, ¶¶ 4-10 (alterations in Opposition Br.).

asked how much, and I believe Grant said a few million dollars was up-streamed.").  The

Trustee concludes that this testimony refutes Defendants' assertions that he was sufficiently

informed of the Transfers or their magnitude, and instead shows that the truth concerning the

magnitude of the Transfers was concealed by misrepresenting the amounts up-streamed as

relatively minor.  Additionally, the Trustee contends that the information conveyed in 2018

would not have been enough to allow him to state a claim with particularity as required by

Federal Rule of Civil Procedure 9(b) and that resolution of these disputed issues of fact requires

the weighing of evidence and credibility determinations that the Court cannot make on

summary judgment.  I disagree.

      The one-year savings provision under either DUFTA or TUFTA "begins to run at the

point when a plaintiff discovers or, in the exercise of reasonable care, could have discovered the

transfer and its fraudulent nature."  *JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211,

1240 (Del. Ch. 2019); see also *Duran v. Henderson*, 71 S.W.3d. 833, 839 (Tex. App. 2002)

(citing *Ruebeck v. Hunt*, 142 Tex. 167, 176 (1943)) ("[TUFTA's] discovery rule provides that a

claim for fraud does not accrue, and thus the limitation period does not begin to run, until the

fraud is discovered, or in the exercise of reasonable diligence should have been discovered.").

While the Trustee makes much of the fact that the information conveyed at the meeting would

not have been sufficient under the applicable rules of civil procedure for him to file a complaint

for fraudulent transfer, that is not relevant.  The limitations period begins when a party becomes

aware of information that would prompt a reasonable person to conduct an inquiry.  *Pomeranz v.*

*Museum Partners, L.P.*, No. Civ.A 20211, 2005 WL 217039, at *3 (Del. Ch. Jan. 24, 2005)

("[P]laintiffs are on inquiry notice when they have sufficient knowledge to raise their suspicions

to the point where persons of ordinary intelligence and prudence would commence an

investigation that, if pursued would lead to the discovery of the injury); *Burkhart v. Genworth Fin., Inc.*, 250 A.3d 842, 859-60 (Del. Ch. 2020) (quoting *In re Dean Witter*, No. Civ.A. 14816, 1998 WL 442456, at*7 (Del. Ch. July 17, 1998) ("Under the inquiry notice standard, Plaintiffs were required to file their claims no more than one year after 'persons of ordinary intelligence and prudence would have facts sufficient to put them on inquiry which, *if pursued*, would lead to the discovery of the injury' to file their claim."); *In re Transamerica Airlines, Inc.*, No. Civ.A. 1039-N, 2006 WL 587846, at *5-6 (Del. Ch. Feb. 28, 2006) (refusing to apply the discovery rule where previously discovered information should reasonably have been expected to cause a person in the Plaintiff's shoes to conduct an inquiry). Here, even if I set aside completely the evidence submitted by the Defendants, the Trustee's evidence alone establishes that the Trustee was on notice regarding the potential movement of money by the Defendants that, under the circumstances, should have prompted him to take timely steps to investigate the possibility that he held a claim.

The statements made at the 2018 Meeting were not made in isolation but were made in the context of the parties' attempt to settle the Trustee's already existing litigation in which he alleges that Defendants had made other fraudulent transfers. Given that fact, there can be no reasonable debate about whether the revelations made at the 2018 Meeting that *more* transfers had been made should have set off alarm bells. In fact, the Trustee's own witness admitted that this was precisely his reaction when, at the 2018 Meeting, Defendants informed him that ANC was judgment proof. As Mr. Coren testified:

> When the Trustee and I attempted to drill down into specifics about [ANC]'s finances, we were met with stonewalling by Mr. Maier and Attorney Stein. **One of my specific concerns given the large amount of cash paid to [ANC] as part of the [ANC Transaction] (over $29 million) was whether [ANC] had up-streamed any monies to any of its related entities.**[14]

---

[14] Coren Decl., ¶ 7 (emphasis added).

Mr. Coren went on to testify that in response to his follow up questions to Defendants about possible up-streaming, he was told that Defendants would not be providing any more details without a judgment, information that should have solidified his concerns that something unlawful might have occurred rather than alleviated them.  Yet, the Trustee decided not to take further action at that time.  This decision was fatal to his claim.  *See Pirtle v. Kahn*, 177 S.W.3d 567, 571 (Tex. Ct. App. 2005) ("the discovery rule requires a plaintiff to seek information about his injuries and their likely cause once he is apprised of facts that would make a reasonably diligent person seek information"); *Basic Capital Mgmt. v. Dynex Capital, Inc.*, 976 F.3d 585, 591 (5th Cir. 2020) ("Upon hearing that a defendant no longer has any assets, especially one being sued for millions of dollars, a reasonable plaintiff would make some sort of inquiry into the situation. And since discovery in the state-court litigation was ongoing when the deposition occurred, asking a few follow-up questions at the deposition, for example, would likely have borne fruit.").

The Trustee counters that the information he possessed in 2018 suggested only *de minimis* transfers of $1 or $2 million, which the Trustee did not feel was worthy of investigation. The Trustee contends that it was not until 2021 that he learned that Defendants had actually transferred nearly $24 million, at which point, the Trustee contends, he acted promptly in filing this action.  But that is not how the discovery rule works.  "A plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's application, so long as the plaintiff discovers or should have discovered that he was injured." *Amo Dev., LLC v. Alcon Vision, LLC*, Civil Action No. 20-842-CFC, 2022 U.S. Dist. LEXIS 219368, at *15 (D. Del. Dec. 6, 2022) (quotations and citations omitted) (rejecting argument that the information at plaintiff's disposal "did not provide a meaningful window into the full extent of the copying reflected in

[defendant's] source code"); *see also Kach v. Hose*, 589 F.3d 626, 635 (3d Cir. 2009) (holding that statute of limitations begins to run "even though the full extent of the injury is not then known or predictable") (citations omitted).

I am similarly unpersuaded by the Trustee's argument that the information conveyed at the 2018 Meeting only suggested transfers had been made but lacked sufficient detail for him to conclude they were fraudulent. In support of this position the Trustee relies on *State Farm Mut. Auto. Ins. Co. v. Cordua*, 834 F. Supp. 2d 301, 308 (E.D. Pa. 2011). In *Cordua*, the Court denied summary judgment on the issue of the timeliness of plaintiff's claims because defendants failed to establish that plaintiffs knew or should have known about the fraudulent nature of the transfers. *Id.* at 308 (holding that the fact that plaintiffs knew defendant had received proceeds did not place them on notice of fraudulent transfers, where they had no reason to know the proceeds were being passed on to another entity). Unlike the plaintiffs in *Cordua*, however, at the time the Trustee received the information in question, he was already in the midst of a lawsuit in which he had alleged the Defendants were making transfers of a fraudulent nature. Given that fact, it is patently unreasonable for the Trustee to claim that he should not be charged with knowledge that these new transfers might also be of a fraudulent nature.

The Trustee suggests that he would have been unable to discover the truth about the Transfers even if he had pursued the matter further in 2018, arguing that in light of the Defendants' repeated resistance to his discovery efforts it was reasonable for him to conclude that Defendants likely would not have complied with Rule 2004 requests or other investigative means. That is mere speculation and does not excuse the Trustee's total inaction. The discovery process, including Rule 2004 examinations, provides procedural mechanisms to compel a

13

Case: 25-1675   Document: 22   Page: 92   Date Filed: 06/30/2025

Case 1:24-cv-00421-GBW-MPW   Document 45-3   Filed 02/07/25   Page 14 of 14 PageID #: 1977

recalcitrant party to respond.  The evidence the Trustee put forth does not demonstrate that he was unable to discover the alleged fraud, only that he chose not to do so.

Because the Trustee cannot show that he acted with reasonable diligence in investigating his claims upon his awareness that the Defendants may have made unlawful transfers, he has not met his burden of establishing that he is entitled to the benefit of either DUFTA's or TUFTA's one-year savings clause.  His claim is therefore untimely and must be dismissed.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

For the foregoing reasons, Defendants' Motion is **GRANTED**.

Dated:  February 13, 2024

JOHN T. DORSEY, U.S.B.J.

JA43